DANIEL POMEROY, EMPLOYEE, PLAINTIFF v. TANNER MASONRY, EMPLOYER, USF&G INSURANCE, CARRIER; DEFENDANTS

No. COA01-505

(Filed 2 July 2002)

**1. Workers' Compensation— change in condition—additional medical compensation—notice—Form 18**

Even though a plaintiff in a workers' compensation action did not specifically allege a change in condition under N.C.G.S. § 97-47 or specifically state a claim for additional medical compensation under N.C.G.S. § 97-25, plaintiff's filing of a Form 18 was sufficient to give the Industrial Commission the requisite written notice.

**2. Workers' Compensation— return to work—pre-injury wages**

The Industrial Commission did not err in a workers' compensation action by finding that plaintiff had returned to work at his pre-injury wages and concluding that the Form 21 presumption of disability had been rebutted. There is no indication in the record that plaintiff returned to work at wages less than he was receiving prior to the accident; although the Form 28B does not indicate the weekly wage at which plaintiff returned to work, the record does not show that plaintiff objected to the Form 28B or otherwise asserted that he had returned to work at wages less than he was receiving prior to the accident.

**3. Workers' Compensation— alleged deteriorated physical condition—additional compensation denied**

The Industrial Commission did not err by denying plaintiff's claim for additional compensation in a workers' compensation action where plaintiff claimed that his physical condition had deteriorated since he returned to work and that he is now incapable of earning wages, but there was competent evidence to support the Commission's findings that plaintiff was working prior to being unemployed and that plaintiff certified when applying for unemployment benefits that he did not have any medical condition that would hinder his return to work. Although there was testimony which may have supported a contrary finding, the Commission and not the court weighs evidence and assesses its credibility.

**4. Workers' Compensation— findings—reasonably necessary medical treatment**

A workers' compensation action was remanded for further findings where the Industrial Commission found that plaintiff was entitled to compensation for reasonably necessary medical treatment under N.C.G.S. § 97-25 as it then existed but left unresolved plaintiff's claim for specific medical treatment.

Appeal by plaintiff and defendants from Opinion and Award entered 19 December 2000 by the North Carolina Industrial Commission and appeal by plaintiff from Opinion and Award entered 19 February 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 February 2002.

POMEROY v. TANNER MASONRY

[151 N.C. App. 171 (2002)]

*Bollinger & Piemonte, PLLC, by George C. Piemonte, for plaintiff-appellee/cross-appellant.*

*Morris York Williams Surles & Barringer, LLP, by John F. Morris and Keith B. Nichols, for defendant-appellants/cross-appellees.*

CAMPBELL, Judge.

Tanner Masonry (Employer) and USF&G Insurance (collectively, Defendants) appeal from a 19 December 2000 opinion and award of the North Carolina Industrial Commission (the Commission). Specifically, Defendants contend the Commission erred in concluding that Daniel Pomeroy (Plaintiff) is "entitled to reasonably necessary medical treatment related to his compensable injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability." Plaintiff likewise appeals from the Commission's 19 December 2000 opinion and award, contending the Commission erred in finding and concluding that "Plaintiff's current lack of employment or inability to work, if any, is not causally related to his injury of June 14, 1994 and plaintiff has not undergone a substantial change of condition related to his injury by accident." Plaintiff also appeals from a 19 February 2001 opinion and award in which the Commission concluded that it did not have jurisdiction to rule on Plaintiff's motion for reconsideration.

On 14 June 1994, Plaintiff, while working as a mason foreman for Employer, was injured when he fell six to eight feet from a scaffold and landed on a bolt, which penetrated his lower back. Plaintiff was taken to Lake Norman Regional Medical Center, where Dr. Marcus Wever, a board-certified general surgeon, performed surgery on Plaintiff's back, during which the puncture wound to Plaintiff's back was fully explored, irrigated, cleaned of debris and closed. Following surgery, Plaintiff remained in the hospital for a few days. On 15 June 1994, Dr. William A. Kutner, an orthopaedic surgeon, examined Plaintiff and found no obvious fractures associated with Plaintiff's injuries. Plaintiff was discharged from the hospital on 18 June 1994.

Following his discharge from the hospital, Plaintiff was examined by Dr. Wever in the outpatient clinic on several occasions. On 17 August 1994, after Plaintiff's final follow-up appointment, Dr. Wever released him to return to work the following week with no restrictions or permanent partial impairment indicated. Dr. Wever opined

that Plaintiff had reached maximum medical improvement consistent with his injury and indicated that Plaintiff would "be seen in follow-up on an as-needed basis." Following his injury, Plaintiff also received physical therapy for his back. On 26 August 1994, Plaintiff's physical therapist instructed him to return to work the following Monday (29 August 1994) with no restrictions or permanent partial impairment indicated.

On 27 June 1994, Plaintiff and Defendants entered into an Industrial Commission Form 21 Agreement for Compensation for Disability (Form 21 Agreement) stating that Plaintiff "sustained an injury by accident arising out of and in the course of [his] employment [with Employer]" on 14 June 1994, and that the accident resulted in a "back injury." The Form 21 Agreement was approved by the Commission on 5 August 1994. Under the terms of the Form 21 Agreement, Defendants paid Plaintiff compensation at the rate of $346.68 per week for temporary total disability from 14 June 1994 to 28 August 1994. Defendants also paid for Plaintiff's medical treatment in the total amount of $9,055.10.

On 29 August 1994, Plaintiff returned to work for Employer at full duty without restrictions. Plaintiff's return to work was noted on an Industrial Commission Form 28B executed and filed by Defendants on 29 August 1994. The Form 28B also noted that Plaintiff's final compensation check was forwarded to him on 29 August 1994. The Form 28B did not indicate the weekly wage at which Plaintiff had returned to work. By its terms, this Form 28B did not purport to close Plaintiff's case, for it appears that additional medical expenses were yet to be paid by Defendants.

On 24 October 1994, Defendants filed a second Form 28B notifying Plaintiff that his case was closed and that he had two years from the date of receipt of his final compensation check in which to notify the Commission, in writing, that he claimed further benefits. *See* N.C. Gen. Stat. § 97-47 (2001). This second Form 28B also did not indicate the weekly wage at which Plaintiff had returned to work.

In December 1994, Plaintiff stopped working for Employer and moved to New York. Plaintiff returned to work in New York two or three weeks later as a mason for H & R Masonry, where he worked for approximately one year. While working for H & R Masonry, Plaintiff earned lower wages than he had earned while working for Employer. Plaintiff attributed his lower wages to the economic recession affecting New York at the time. According to Plaintiff's testimony, he

stopped working for H & R Masonry because he could not perform as expected due to continuing problems with his back.

Plaintiff was also employed in New York by Yancey Conant Masonry (Yancey), where he worked as a mason for four or five months. While working for Yancey, Plaintiff earned wages equal to those he had earned while working for Employer prior to moving to New York. Plaintiff stopped working for Yancey in December of 1995. According to Plaintiff, he had to stop working for Yancey due to back problems. Plaintiff was unemployed from December 1995 until this case was heard by the Deputy Commissioner on 28 January 1998.

On 10 January 1996, Plaintiff was examined in New York by Dr. Jalal Sadrieh, an orthopaedic surgeon. Dr. Sadrieh ordered an x-ray of Plaintiff's lumbar spine, which showed no evidence of foreign material and that Plaintiff's bony structures and disc spaces were normal. Dr. Sadrieh was given an oral history of Plaintiff's back problems, but did not review any records from Plaintiff's treatment for his compensable back injury in North Carolina. Dr. Sadrieh diagnosed Plaintiff with "acute and subacute low back sprain with sciatica and possible disc herniation." Dr. Sadrieh referred Plaintiff to physical therapy and recommended that he undergo an MRI. On 19 February 1996, Plaintiff returned to Dr. Sadrieh. Plaintiff had not been to physical therapy, nor had plaintiff undergone an MRI, because Defendants had refused to authorize insurance coverage for such medical treatment. Plaintiff was last examined by Dr. Sadrieh on 19 February 1996.

On 21 February 1996, Plaintiff was examined by Dr. Vincent Sportelli, a chiropractor. Plaintiff remained under the care of Dr. Sportelli until 4 October 1996. During this time, Plaintiff was seen by Dr. Sportelli on a total of forty-two occasions. In his deposition testimony, Dr. Sportelli opined that Plaintiff had a sixty-five percent (65%) permanent partial disability to the pelvic girdle causally related to the injury suffered by Plaintiff on 14 June 1994. However, the record shows that Dr. Sportelli's opinion was based solely on the history provided by Plaintiff and the Plaintiff's condition at the time Dr. Sportelli examined him. Dr. Sportelli had no access to the records from Plaintiff's 14 June 1994 back injury and subsequent treatment in North Carolina. As a result, Dr. Sportelli was under the impression that Plaintiff's earlier back injury was caused by a fifteen to twenty foot fall, while the records from North Carolina make it clear that Plaintiff only fell six to eight feet. Defendants refused to authorize insurance coverage for Plaintiff's treatment by Dr. Sportelli.

[1] On 22 February 1996, Plaintiff filed an Industrial Commission Form 18 Notice of Accident to Employer alleging injury to his back resulting from the 14 June 1994 accident. Plaintiff did not specifically allege a change in condition or specifically state a claim for additional medical compensation under N.C. Gen. Stat. § 97-25. Nevertheless, we hold that Plaintiff's act of filing the Form 18 was sufficient to give the Commission the requisite written notice of Plaintiff's claims for further compensation due to change in condition under N.C.G.S. § 97-47 and additional medical compensation under N.C.G.S. § 97-25. *See Apple v. Guilford County*, 321 N.C. 98, 101, 361 S.E.2d 588, 591 (1987); *Chisholm v. Diamond Condominium Constr. Co.*, 83 N.C. App. 14, 17, 348 S.E.2d 596, 599 (1986).

On 1 April 1996, Defendants filed an Industrial Commission Form 61 denying Plaintiff's claim for additional benefits on the grounds that his current condition was not the result of the 14 June 1994 compensable back injury. On 26 November 1996, Plaintiff requested a hearing on his claim for additional disability compensation and further medical treatment.

Plaintiff's claim was heard before Deputy Commissioner Haigh on 28 January 1998. Following Deputy Commissioner Haigh's departure from the Commission, Plaintiff's claim was transferred to Deputy Commissioner Taylor for decision. On 4 February 2000, Deputy Commissioner Taylor entered an opinion and award denying Plaintiff's claim. Deputy Commissioner Taylor found as fact and concluded as a matter of law that "Plaintiff's current condition is not causally related to his June 14, 1994 accident." Plaintiff appealed to the Full Commission.

On 19 December 2000, the Full Commission entered an opinion and award finding as fact that "[p]laintiff's current lack of employment or inability to work, if any, is not causally related to his June 14, 1994 accident."

The Full Commission also entered the following pertinent conclusions of law:

4. Plaintiff's current lack of employment or in ability [sic] to work, if any, is not causally related to his injury of June 14, 1994 and plaintiff has not undergone a substantial change of condition related to his injury by accident.

5. However, since plaintiff was injured prior to July 5, 1994, plaintiff's claim for additional medical compensation is not

barred by N.C.G.S. § 97-47 or because defendants rebutted the presumption of disability. Plaintiff is therefore entitled to reasonably necessary medical treatment related to his compensable injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability.

Based on its findings of fact and conclusions of law, the Full Commission denied Plaintiff's claim for additional disability compensation under N.C.G.S. § 97-47. However, the Commission ordered that "Defendants shall pay for plaintiff's reasonably necessary medical treatment related to his compensable injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability." The Commission's opinion and award did not order Defendants to pay for any specific medical treatment that Plaintiff had received.

On 9 January 2001, Plaintiff filed a motion for reconsideration with the Commission requesting an order directing Defendants to pay for the medical treatment provided to Plaintiff in New York by Dr. Sadrieh and Dr. Sportelli. Plaintiff also requested an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. On 26 January 2001, Defendants filed notice of appeal from the Commission's 19 December 2000 opinion and award. On 19 February 2001, the Commission entered an opinion and award concluding that it no longer had jurisdiction to rule on Plaintiff's motion for reconsideration due to Defendants having already filed notice of appeal in this Court. On 21 February 2001, Plaintiff filed notice of appeal from both the 19 December 2000 opinion and award and the 19 February 2001 opinion and award.

The standard of review of appellate courts on appeal from an opinion and award of the Industrial Commission is limited to determining whether there is *any* competent evidence to support the Commission's findings of fact and whether such findings of fact support the Commission's conclusions of law. *McLean v. Roadway Express*, 307 N.C. 99, 102, 296 S.E.2d 456, 458 (1982); *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 652, 508 S.E.2d 831, 834 (1998). On appeal, this Court does not weigh the evidence and decide the issue on the basis of its weight; rather our duty goes no further than to determine whether the record contains any evidence tending to support the Commission's findings of fact, even when there is evidence to support a contrary finding of fact. *Timmons v. N.C. Dep't of Transp.*, 351 N.C. 177, 181, 522 S.E.2d 62, 64 (1999) (citing *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998)).

"Furthermore, the Commission is the sole judge of the credibility of the witnesses as well as how much weight their testimony should be given." *Bailey*, 131 N.C. App. at 653, 508 S.E.2d at 834. Additionally, although the Commission "is not required . . . to find facts as to all credible evidence . . . the Commission must find those facts which are necessary to support its conclusions of law," *Peagler v. Tyson Foods, Inc.*, 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000), and the Commission must "make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends." *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1977).

### Additional Compensation Under N.C.G.S. § 97-47

[2] We first address Plaintiff's assignments of error to the Commission's denial of his claim for additional compensation on the grounds of a change in condition under N.C.G.S. § 97-47.

Plaintiff first contends that the Commission erred in finding that he had returned to work at his pre-injury wages and concluding that the From 21 presumption of disability had been rebutted by Defendants. We disagree.

Plaintiff sustained an injury by accident arising out of and in the course of his employment with Employer on 14 June 1994. Defendants admitted liability and entered into a Form 21 Agreement with Plaintiff for compensation, under which Plaintiff received $346.68 per week until 29 August 1994, when he returned to work. The Form 21 Agreement was approved by the Commission and became an award of the Commission enforceable, if necessary, by court decree. *Chisholm*, 83 N.C. App. at 17, 348 S.E.2d at 598 (citing *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 75 S.E.2d 777 (1953)). Upon approval by the Commission, the Form 21 Agreement raised the presumption that Plaintiff was disabled under the Worker's Compensation Act. *Watkins v. Motor Lines*, 279 N.C. 132, 138, 181 S.E.2d 588, 592 (1971). The Form 21 presumption of disability ends when the employee regains his or her pre-injury capacity to earn wages. *Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 81, 476 S.E.2d 434, 439 (1996).

Here, Plaintiff returned to work for Employer at full duty without restrictions on 29 August 1994. There is no indication in the record that Plaintiff returned to work at wages less than those he was receiving prior to his compensable back injury. On 29 August 1994, Plaintiff's final weekly compensation payment was forwarded to him

for the period during which he was disabled. On 24 October 1994, Employer filed a Form 28B with the Commission informing Plaintiff that his case was closed as of 29 August 1994. The Form 28B does not indicate the weekly wage at which Plaintiff returned to work, but the record does not show that Plaintiff objected to the Form 28B or otherwise asserted that he had returned to work at wages less than those he was receiving prior to the 14 June 1994 accident. The filing of the Form 28B presumptively ended Plaintiff's claim for disability benefits as of 29 August 1994. *See Watkins,* 279 N.C. at 137, 181 S.E.2d at 592. The evidence of record supports the Commission's finding that Plaintiff had returned to work at his pre-injury wages and the conclusion that Plaintiff had regained his pre-injury earning capacity. Thus, the Commission did not err in concluding that Plaintiff's Form 21 presumption of disability had been effectively rebutted by Defendants.

**[3]** Once an award of the Commission becomes final, the Commission may, "upon its own motion or upon application of any party in interest on the grounds of a change in condition," review such award and "on such review may make an award ending, diminishing, or increasing the compensation previously awarded." N.C.G.S. § 97-47. Our case law defines a "change in condition" under N.C.G.S. § 97-47 as a condition occurring after a final award of compensation that is "different from those existent when the award was made[,]" *Weaver v. Swedish Imports Maintenance, Inc.,* 319 N.C. 243, 247, 354 S.E.2d 477, 480 (1987), and results in a substantial change in the physical capacity to earn wages. *Bailey,* 131 N.C. App. at 654, 508 S.E.2d at 835 (citing *Pratt v. Central Upholstery Co., Inc.,* 252 N.C. 716, 722, 115 S.E.2d 27, 33-34 (1960)). This "change in condition" can consist of either

> [1] a change in the claimant's physical condition that impacts his earning capacity, [2] a change in the claimant's earning capacity even though claimant's physical condition remains unchanged, or [3] a change in the degree of disability even though claimant's physical condition remains unchanged.

*Blair v. American Television & Communications Corp.,* 124 N.C. App. 420, 423, 477 S.E.2d 190, 192 (1996) (internal citations omitted). In all instances, the party seeking modification of an award due to a "change in condition" has the burden to prove that the new condition is directly related to the original compensable injury that is the basis of the award the party seeks to modify. *Id.*

In this case, Plaintiff claims that his physical condition has deteriorated since he returned to work on 29 August 1994 to the point that he is physically incapable of earning any wages. In support of his claim, Plaintiff testified that he continued to suffer from back pain after his return to work for Employer, that the condition of his back progressively worsened during his two stints of employment in New York, and that his back eventually deteriorated to the point that he was unable to work. Plaintiff also offered the testimony of Dr. Sadrieh and Dr. Sportelli. Dr. Sadrieh examined Plaintiff approximately nineteen months after his 14 June 1994 compensable back injury. Based on the oral history given by Plaintiff, and the fact that Plaintiff denied having suffered any other injuries to his back, Dr. Sadrieh opined that the 14 June 1994 compensable injury was the cause of Plaintiff's condition at the time Dr. Sadrieh examined him in early 1996.

Dr. Sportelli did not examine Plaintiff for the first time until approximately 20 months after the 14 June 1994 injury. Dr. Sportelli's diagnosis was also based solely on the oral history provided by Plaintiff and Plaintiff's condition at the time. Dr. Sportelli opined that Plaintiff's condition was directly and causally related to his compensable injury on 14 June 1994. Dr. Sportelli further opined that Plaintiff had a sixty-five percent (65%) permanent partial disability to his pelvic girdle.

Despite the testimony of Plaintiff, Dr. Sadrieh and Dr. Sportelli, the Commission found that "[p]laintiff's current lack of employment or inability to work, if any, is not causally related to his June 14, 1994 accident." Plaintiff assigned error to this finding of fact. The question for this Court is whether the record contains *any* competent evidence to support this finding of fact, even if there is evidence to support a contrary finding of fact. *See Timmons*, 351 N.C. at 181, 522 S.E.2d at 64.

Based on competent evidence in the record, the Commission found as fact (in Findings Nos. 10, 11 and 12) that Plaintiff returned to work for Employer at full duty without restrictions on 29 August 1994 and remained there for approximately three months, that Plaintiff worked for H&R Masonry in New York for approximately one year, and that Plaintiff also was employed by Yancey for four or five months in 1995. The record further shows that Plaintiff received more than $200.00 per week in unemployment benefits for three or four months after he left his job in New York with Yancey in December 1995. Plaintiff testified that he was obligated to look for work while he was receiving unemployment benefits, but that he did not do so

because the condition of his back would not allow him to find a job in his field. However, in order to receive unemployment benefits under New York law, Plaintiff was required to certify that he was physically able to work.[1] Thus, there is competent evidence to support the following finding of fact entered by the Commission:

> 17. Plaintiff received weekly unemployment benefits, in the amount of $200.00 per week, for approximately three to four months. To apply for unemployment benefits, plaintiff certified that he did not have any medical condition that would hinder his return to work, and that he was actively seeking employment.

Further, the Commission's Findings Nos. 10, 11 and 12 indicate that prior to drawing unemployment benefits, Plaintiff was in fact physically able to work and was actually working. These findings of fact and the evidence on which they are based provide competent evidence to support the Commission's finding that Plaintiff's lack of employment or inability to work was not causally related to the 14 June 1994 accident. While the testimony of Plaintiff, coupled with that of Dr. Sadrieh and Dr. Sportelli, may have been competent evidence to support a finding that Plaintiff's inability to work at the time of the hearing was causally related to the 14 June 1994 compensable injury, the Commission made a contrary finding. It is the duty of the Commission, not this Court, to weigh the evidence and to assess its credibility, and when conflicting evidence is presented, the Commission's finding of causal connection between the accident and the disability is conclusive. *Bailey*, 131 N.C. App. at 655, 508 S.E.2d at 835 (citing *Anderson v. Lincoln Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 275 (1965)). There is competent evidence to support the Commission's findings and conclusions to the effect that Plaintiff failed to establish that his lack of employment was causally related to his 14 June 1994 accident and that he had undergone a "change in condition" related to the 14 June 1994 accident. Therefore, we affirm the Commission's denial of Plaintiff's claim for additional compensation under N.C.G.S. § 97-47.

Compensation for Medical Treatment Under N.C.G.S. § 97-25

[4] Defendants contend that the Commission erred in ordering them to pay for "[P]laintiff's reasonably necessary medical treatment

---

1. New York Labor Law § 591(2) (2002) provides:

"no [unemployment] benefits shall be payable to any claimant who is not capable of work or who is not ready, willing and able to work in his usual employment or in any other for which he is reasonably fitted by training and experience."

related to his compensable injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability[,]" under N.C.G.S. § 97-25.[2]

Subsequent to the establishment of a compensable injury under the Workers' Compensation Act, an employee may seek compensation under N.C.G.S. § 97-25 for additional medical treatment when such treatment lessens the period of disability, effects a cure, or gives relief. *Hyler v. GTE Products Co.*, 333 N.C. 258, 261, 425 S.E.2d 698, 700 (1993) (citing *Little v. Penn Ventilator Co.*, 317 N.C. 206, 211, 345 S.E.2d 204, 208 (1986)); *see also* N.C. Gen. Stat. § 97-2(19) (2001). An injured employee has the right to select, even in the absence of an emergency, a physician of his own choosing to provide the medical treatment covered by N.C.G.S. § 97-25, subject to the approval of the Commission. *Schofield v. Tea Co.*, 299 N.C. 582, 590-91, 264 S.E.2d 56, 62 (1980). In order to be compensable under N.C.G.S. § 97-25, "the medical treatment sought must be 'directly related to the original compensable injury.' " *Reinninger v. Prestige Fabricators, Inc.*, 136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999) (quoting *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286 (1996)). When additional medical treatment is required, there is a rebuttable presumption that it is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury. *Id.* In order to receive compensation for additional medical treatment under N.C.G.S. § 97-25, an injured employee is not required to make any showing of a change in his condition or in available medical treatments. *Hyler*, 333 N.C. at 267, 425 S.E.2d at 704. However, an injured employee is required to seek and obtain approval of the Commission within a reasonable time after he has selected a physician and/or medical treatment of his own choosing. *Schofield*, 299 N.C. at 593, 264 S.E.2d at 63.

Here, the Commission concluded that Plaintiff was entitled to "reasonably necessary medical treatment related to his compensable

2. In 1994, the General Assembly added N.C. Gen. Stat. § 97-25.1, which provides that an injured employee's "right to medical compensation shall terminate two years after the employer's last payment of medical or indemnity compensation unless, prior to the expiration of this period, either: (i) the employee files with the Commission an application for additional medical compensation which is thereafter approved by the Commission, or (ii) the Commission on its own motion orders additional medical compensation." N.C. Gen. Stat. § 97-25.1 (2001). This section applies only to injuries occurring on or after 5 July 1994 and thus does not apply to Plaintiff's claim in the instant case.

injury by accident for so long as such treatment tends to effect a cure, provide relief or lessen the period of disability." However, the Commission did not order Defendants to pay for any specific medical treatment received by Plaintiff. As a result, Plaintiff filed a motion for reconsideration with the Commission requesting that it amend its opinion and award and order Defendants to pay for the medical treatment rendered by Dr. Sadrieh and Dr. Sportelli.[3] Before the Commission could rule on Plaintiff's motion for reconsideration, Defendants filed notice of appeal from the Commission's 19 December 2000 opinion and award. Thereafter, the Commission entered an opinion and award concluding that it lacked jurisdiction to rule on Plaintiff's motion for reconsideration due to Defendants' appeal to this Court. Plaintiff contends that the Commission erred in concluding that it lacked jurisdiction to rule on Plaintiff's motion for reconsideration. We need not address this issue in detail, for assuming, *arguendo*, that the Commission was correct in its determination that it lacked jurisdiction to rule on Plaintiff's motion for reconsideration, we nonetheless are constrained to remand the case to the Commission for further findings on the issue of Plaintiff's entitlement to additional medical compensation under N.C.G.S. § 97-25.

Under N.C.G.S. § 97-25, as it existed when Plaintiff suffered his compensable injury by accident, an employee is entitled to compensation for reasonably necessary medical treatment when such treatment lessens the period of disability, effects a cure, or gives relief. *Hyler*, 333 N.C. at 261, 425 S.E.2d at 700. Thus, the Commission's conclusion on this issue was a correct general statement of the law on the subject. However, the Commission did not fully apply the law to the facts before it and order Defendants to pay for any specific medical treatment received by Plaintiff. The Commission left unresolved Plaintiff's claim for payment of the medical treatment provided by Dr. Sadrieh and Dr. Sportelli. As earlier noted, "the Commission must find those facts which are necessary to support its conclusions of law[,]" *Peagler*, 138 N.C. App. at 602, 532 S.E.2d at 213, and the Commission must "make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends." *Gaines*, 33 N.C. App. at 579, 235 S.E.2d at 859. Further, when the Commission's findings of fact are insufficient to determine the rights of the parties upon a claim for compensation, the proper procedure on appeal is to remand the case to the Commission. *Mills v. Fieldcrest Mills*, 68 N.C.

---

3. Plaintiff also requested in his motion for reconsideration an assessment of attorney's fees against Defendants pursuant to N.C.G.S. § 97-88.1.

App. 151, 158, 314 S.E.2d 833, 838 (1984). It is not the duty of this Court to make the findings of fact necessary to support an award of compensation. Therefore, we are constrained to remand for further findings.

On remand, the Commission must make findings based upon competent evidence relative to whether the treatment provided and prescribed by Dr. Sadrieh and Dr. Sportelli was required to effect a cure or give relief from the 14 June 1994 compensable injury or tended to lessen the period of disability caused by said compensable injury. *See Schofield*, 299 N.C. at 595, 264 S.E.2d at 65. The Commission must also make findings of fact relative to whether the condition treated by Dr. Sadrieh and Dr. Sportelli was directly related to the 14 June 1994 compensable injury. *See Reinninger*, 136 N.C. App. at 259, 523 S.E.2d at 723. In so doing, the Commission must give Plaintiff the benefit of the rebuttable presumption that additional medical treatment is related to the original compensable injury. *See id.* In addition, the Commission must make findings of fact relative to whether Plaintiff sought approval of the Commission within a reasonable time after he received the treatment from Dr. Sadrieh and Dr. Sportelli. *See Schofield*, 299 N.C. at 594, 264 S.E.2d at 64. In making these required findings of fact, the Commission is to consider the record evidence as well as any additional evidence the Commission finds it necessary to take. Finally, on remand, the Commission is to rule on Plaintiff's motion for attorney's fees pursuant to N.C.G.S. § 97-88.1.

For the reasons stated herein, the Commission's denial of Plaintiff's claim for additional disability compensation under N.C.G.S. § 97-47 is affirmed, and the case is remanded to the Commission for further proceedings consistent with this opinion as to Plaintiff's claim for additional medical compensation under N.C.G.S. § 97-25 and Plaintiff's motion for attorney's fees under N.C.G.S. § 97-88.1.

Affirmed in part and remanded in part.

Judges MARTIN and HUDSON concur.