***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Houser.
 ***********
The pleadings and record evidence present one:
 ISSUE
Whether the Defendants are required to provide the medical compensation and treatment Plaintiff seeks for his medical conditions due to the previously approved Industrial Commission Form 21 and the Parsons presumption. *Page 2 
 ***********
The following documents were admitted into evidence at the hearing or by supplement following the hearing as:
 EXHIBITS
1. A packet of Medical Records admitted into the record and marked as Stipulated Exhibit #1.
2. Defendants submitted the following
 a. An Approved Industrial Commission Form 21 Agreement marked as Defendants' Exhibit #1;
 b. An Industrial Commission Form marked as Defendants' Exhibit #2; and
 c. An Industrial Commission Form 28 marked as Defendants' Exhibit #3.
 ***********
Based upon the competent credible evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
2. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter.
3. On all relevant dates the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On all relevant dates and on December 26, 1993, an employment relationship existed between Plaintiff and Defendant-Employer. *Page 3 
5. On all relevant dates, Plaintiff's average weekly wage was $508.18, yielding a compensation rate of $338.79.
6. On December 26, 1993, Plaintiff, then forty-four (44) years of age and a college graduate with a bachelor's degree from North Carolina A T, was employed by Defendant-Employer as an Assistant Manager. Plaintiff had been employed by Taco Bell in this capacity since approximately July 1992.
7. On December 26, 1993, Plaintiff sustained an injury by accident to his back while lifting a box of sauce. Plaintiff's claim was accepted as compensable by Defendants through the filing of an Industrial Commission Form 21 Agreement for Compensation for Disability with the Industrial Commission. This Form 21 Agreement was approved by the Industrial Commission on February 25, 1994. Plaintiff received payments of ongoing total disability compensation for the periods January 3, 1994 through February 14, 1994 and from February 19, 1994 through May 11, 1994.
8. Following his admittedly compensable December 26, 1993 back injury, Plaintiff sought medical treatment at Raleigh Community Hospital and reported experiencing low back pain with radiation into his right leg. Plaintiff was diagnosed as having a back strain.
9. On December 28, 1993, Plaintiff sought treatment from Dr. Paul L. Burroughs at The Bone and Joint Surgery Clinic in Raleigh. Plaintiff reported experiencing back pain with some radiation down his right leg. Dr. Burroughs diagnosed Plaintiff as having an acute lumbar strain. On January 4, 1994, with Plaintiff continuing to report experiencing back pain, Dr. Burroughs recommended an MRI. The results of the MRI revealed small central HNPs at L4-L5 and L5-S1. *Page 4 
10. On January 26, 1994, Plaintiff returned to Dr. Burroughs whose notes indicate that Plaintiff was walking normally, but continued to have "flare-ups" of pain. On February 9, 1994, Dr. Burroughs noted that Plaintiff's condition continued to improve and Dr. Burroughs opined that Plaintiff was not a good surgical candidate. Additionally, Dr. Burroughs released Plaintiff to return to work while wearing a back brace.
11. On February 28, 1994, Plaintiff sought treatment from Dr. Michael D. Gwinn at Triangle Spine and Back Care Center. Plaintiff primarily reported experiencing low back pain with no significant leg pain. According to Dr. Gwinn's notes, Plaintiff also reported attempting to return to work on February 15, 1994, but that Plaintiff found that he was unable to continue working due to his back pain. After reviewing Plaintiff's MRI, Dr. Burroughs noted degenerative changes at L4-L5 and L5-S1 with very minimal central disc protrusions at the L4-L5 and L5-S1 level. Based upon the diagnostic tests and an examination, Dr. Gwinn diagnosed Plaintiff as having discogenic back pain with pre-existing degenerative changes at L4-L5 and L5-S1. Additionally, Dr. Gwinn opined that the small central disc protrusions at L4-L5 and L5-S1 were likely related to the chronic degenerative changes at the L4-L5 and L5-S1 levels.
12. For Plaintiff's conditions, Dr. Gwinn recommended conservative treatment and opined that he would not require surgical intervention. Dr. Gwinn also recommended that Plaintiff undergo back rehabilitation, and released him to return to light-duty work with no lifting greater than twenty-five (25) pounds occasionally with no frequent bending or twisting.
13. On April 13, 1994, Plaintiff returned to Dr. Burroughs and reported continued back discomfort. Dr. Burroughs diagnosed Plaintiff as having chronic back pain and a lumbosacral strain, however, Dr. Burroughs reiterated that Plaintiff was not surgical candidate. *Page 5 
Additionally, Dr. Burroughs released Plaintiff to return to work with no heavy lifting as a restriction.
14. On April 29, 1994, Plaintiff returned to Dr. Gwinn whose notes indicate that Plaintiff was doing and feeling much better at that time. An examination by Dr. Gwinn revealed full lumbar spine range of motion and negative straight leg raisings. Dr. Gwinn diagnosed Plaintiff as having a lumbar strain with underlying degenerative disc disease and released him to return to work with a fifty (50) pound lifting restriction on an occasional basis as of May 4, 1994. Additionally, Dr. Gwinn recommended that Plaintiff continue with his back rehabilitation for an additional two (2) weeks.
15. On May 27, 1994, Dr. Gwinn noted that Plaintiff had likely reached maximum medical improvement but that there were no objective medical findings upon which to base a permanent partial impairment rating.
16. Plaintiff returned to work for Defendant-Employer in May 1994 as an Assistant Store Manager earning the same salary he earned at the time of his injury by accident of December 26, 1993. Plaintiff's employment with Defendant-Employer ended in February 1995.
17. On September 27, 1995, Plaintiff returned to Dr. Gwinn and reported a three (3) week history of low back pain. According to Dr. Gwinn's notes, Plaintiff reported that his back pain began after he had moved some furniture in his home. Plaintiff further reported that he also experienced severe pain in both legs, but that his condition was improving. Dr. Gwinn diagnosed Plaintiff as having an exacerbation of his lumbar degenerative disc disease with associated low back pain.
18. On July 26, 1996, Plaintiff sought treatment from Dr. A. J. de Leon, his family physician, and reported experiencing a tingling sensation in both hands after using his hands and *Page 6 
upper extremities excessively during the preceding two (2) weeks at his night job. Dr. de Leon diagnosed Plaintiff as having tendonitis from overuse. There is no reference to back pain in Dr. de Leon's notes from this date.
19. On April 18, 1997, Plaintiff returned to Dr. de Leon and reported experiencing right flank pain that radiated towards his right leg. Plaintiff also reported working at a McDonald's restaurant where he had experienced a worsening of low back symptoms. Dr. de Leon diagnosed Plaintiff as having musculoskeletal type pain and prescribed medication. Plaintiff returned to Dr. de Leon on July 7, 1997, requesting additional pain medication.
20. On November 18, 1997, Plaintiff again returned to Dr. de Leon and reported experiencing severe low back pain that radiated into his right lower extremity. According to Dr. de Leon's notes, this low back pain was brought on by walking and he diagnosed Plaintiff as having an acute low back strain with radiculopathy.
21. On May 11, 2000, Plaintiff sought treatment at Doctor's Urgent Care Center and reported experiencing low back pain that had began the previous Sunday after he had started a walking program. Plaintiff also reported right leg numbness and was diagnosed as having back pain.
22. On August 29, 2000, Plaintiff sought treatment at the Wake Med Emergency Room and reported that he had thrown out his back over the weekend. Plaintiff was diagnosed as having acute low back pain and was discharged.
23. On May 4, 2001, Plaintiff returned to Wake Med and reported experiencing low back pain with numbness in his right leg since the previous Tuesday. X-rays revealed degenerative changes at L4-L5 and L5-S1, and Plaintiff was discharged. *Page 7 
24. On June 24, 2002, Plaintiff sought treatment from Dr. Dennis Turner at Duke University Medical Center and reported experiencing a several year history of low back pain. After examining Plaintiff, Dr. Turner opined that Plaintiff had experienced multiple lumbosacral myofascial strain occurrences, but that surgery was not indicated.
25. In the second half of 2002, Plaintiff relocated to Philadelphia, Pennsylvania where he has undergone treatment with numerous medical care providers including Dr. Sanjay Gupta at Einstein Neighborhood Healthcare; Dr. John R. Cifelli at Albert Einstein Medical Center; and Dr. Deepak Mehrotra at Einstein Neighborhood Healthcare Department of Anesthesiology Pain Center. None of these physicians have recommended surgery, and Plaintiff's treatment since 2002 has consisted primarily of injections and medications.
26. In addition to treatment for back pain since relocating to Pennsylvania, Plaintiff has also treated with Dr. Catherine Anastasopoulou at The Einstein Healthcare Network for hypothyroidism.
27. After his employment with Defendant-Employer ended, Plaintiff went to work at Hot `N Now Burgers as Director of Operations in 1995. Plaintiff was also employed by the United States Postal Service as a temporary mail sorter in 1995 and 1996. Additionally, Plaintiff worked at Delta Consolidated Industries operating a plastic extruder machine, a job which he left because of the development of tennis elbow. After leaving Delta Consolidated Industries, Plaintiff held jobs with IBM, McDonald's, the North Carolina Department of Administration, and also started his own business as a computer technology re-seller. Finally, Plaintiff was employed by the State of Pennsylvania in 2004 following his relocation to that state. *Page 8 
28. Plaintiff presented no evidence and provided no medical records at the hearing of to indicate that any physician wrote him out of work due to his back following his April 29, 1994 release to return to work by Dr. Gwinn, a release which was effective as of May 4, 1994.
29. In Dr. Gwinn's opinion, the degenerative changes in Plaintiff's lumbar spine are not related to the incident of December 26, 1993. Dr. Gwinn's testimony compels a finding that the degenerative changes at L4-L5 and L5-S1 pre-existed that incident. Additionally, after release to return to work on May 5, 1994, Dr. Gwinn certified Plaintiff had reached maximum medical improvement as of May 27, 1994 with no permanent partial disability rating.
30. Dr. Gwinn's opinion that if Plaintiff sought treatment for his back subsequent to May 27, 1994, such treatment would be related to his pre-existing degenerative disc disease is credible and compelling. As for the fifty (50) pound lifting restriction he assigned on May 27, 1994, Dr. Gwinn assigned that restriction because of Plaintiff's degenerative condition which pre-existed the incident of December 26, 1993.
31. Dr. Gwinn has opined to a reasonable degree of medical probability that Plaintiff's lumbar strain was related to the work incident, but that his underlying degenerative changes were not. Also, Dr. Gwinn has opined to a reasonable degree of medical probability that as of May 27, 1994, Plaintiff had fully recovered from his December 26, 1993 lumbar strain.
32. The medical treatment received by Plaintiff subsequent to May 27, 1994 is unrelated to Plaintiff's lumbar strain injury of December 26, 1993. Plaintiff had fully recovered as of May 27, 1994, and any medical treatment received by Plaintiff after that date was not related to his injury by accident of December 26, 1993.
33. There is insufficient credible evidence of record upon which to find that subsequent to his return to work for Defendant-Employer in May 1994 that Plaintiff had any *Page 9 
disability or inability to earn wages as the result of his December 26, 1993 injury by accident as he returned to work for Defendant-Employer in May 1994 earning the same wages he earned prior to December 26, 1993.
34. Plaintiff reached maximum medical improvement with respect to his
December 26, 1993 back strain injury on May 27, 1994 and Plaintiff retains no permanent partial disability related to his back as the result thereof.
 ***********
The foregoing Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. The back strain Plaintiff sustained on December 26, 1993 was an injury by accident arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. The general rule under Parsons
(the Parsons presumption) is that an employee has the benefit of a presumption that any medical treatment is directly related to the compensable injury where the medical treatment is for the same condition or same body part as the original compensable injury.Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). However, a Plaintiff's claim for additional compensation and medical treatment can be denied where Plaintiff's condition is found not to have been directly related to or caused by a work related accident.Pittman v. Thomas Howard,122 N.C. App. 124, 468 S.E.2d 283 (1996). "The Employer may rebut the presumption with evidence that the medical treatment is not directly related to the compensable injury." Perez v. AmericanAirlines/AMR Corp.,174 N.C. App. 128, 135, 620 S.E.2d 288, 292 (2005) (citingReinninger v. Prestige Fabricators, Inc.,136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999)). *Page 10 
3. Even for a workers' compensation claim that has an injury date pre-Hyler, as the present claim does given the injury date of December 26, 1993, a claimant is still only entitled to receive medical treatment that is directly related to the original compensable injury. Pomeroy v. Tanner Masonry,151 N.C. App. 171, 565 S.E.2d 209 (2002); see also, Hyler v. GTEProducts Co., 333 N.C. 258, 425 S.E.2d 698 (1993). For a pre-Hyler claim, "there is a rebuttable presumption that [medical treatment] is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury." Id.
4. Upon approval of the Industrial Commission Form 21 Agreement filed in this claim, there was a presumption that Plaintiff was disabled until he returned to work. See, Cialino v. WalmartStores, 156 N.C. App. 463, 577 S.E.2d 345 (2003); Perez v.American Airlines/AMR Corp.,174 N.C. App. 128, 620 S.E.2d 288 (2005). However, "The Form 21 presumption of disability ends when the employee regains his or her pre-injury capacity to earn wages." Pomeroy v. TannerMasonry, 151 N.C. App. 171, 565 S.E.2d 209 (2002). Defendants can rebut the presumption of disability by showing that Plaintiff returned to work at his pre-injury wages or by showing that Plaintiff regained his pre-injury earning capacity.Id. Evidence that Plaintiff was (a) released to work at full duty without restrictions, (b) physically able to work, and (c) actually working are all competent evidence from which the Full Commission to determine that Plaintiff is no longer disabled as a result of a prior compensable injury. Pomeroy,151 N.C. App. at 180-81, 565 S.E.2d at 215-16. In other words, Defendants can establish that there is no ongoing disability that is causally related to the original compensable injury by showing that Plaintiff is capable of returning to work at a wage level equal to what he was *Page 11 
earning at the time of injury or by showing that he has actually worked and received such wages. Id.
5. Defendants can rebut the presumption of ongoing disability and can also establish there is no disability "by offering medical evidence that [Plaintiff] no longer retained any impairment as a result of the workplace injury." Cialino v. Wal-Mart Stores,156 N.C. App. 463, 577 S.E.2d 345 (2003) (citing Stone v.G G Builders, 346 N.C. 154, 484 S.E.2d 365 (1997)) andHarrington v. Adams-Robinson Enterprises,128 N.C. App. 496, 495 S.E.2d 377, (Walker, J., dissenting),adopted per curiam, 349 N.C. 218, 504 S.E.2d 786 (1998)).
6. The medical treatment received by Plaintiff subsequent to May 27, 1994 was unrelated to his December 26, 1993 lumbar strain as he had fully recovered from that condition as of May 27, 1994. N.C. Gen. Stat. § 97-25.
7. Defendants have satisfied their burden of rebutting theParsons presumption that the medical treatment received by Plaintiff subsequent to May 27, 1994 is unrelated to his injury by accident of December 26, 1993. Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997).
8. Defendants have successfully rebutted the presumption of continuing disability Plaintiff enjoyed by virtue of the approved Form 21 in this matter by proving that any disability or inability to earn wages which Plaintiff may have experienced subsequent to his return to work in May 1994 was unrelated to his December 26, 1993 injury by accident. N.C. Gen. Stat. § 97-29; Perez v. American Airlines/AMRCorp., 174 N.C. App. 128, 620 S.E.2d 288 (2005).
 ***********
The foregoing Findings of Fact and Conclusions of Law engender the following:
 AWARD *Page 12 
1. Plaintiff's claim for additional medical benefits following his release by Dr. Gwinn on May 27, 1994 is hereby DENIED.
2. Plaintiff's claim for additional disability benefits following his return to work for Defendant-Employer in May 1994 is hereby DENIED.
3. Plaintiff is not entitled to additional indemnity or medical compensation under the Act.
4. No additional costs are assessed at this time.
This the ___ day of January 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1