DEBRA CIALINO, EMPLOYEE, PLAINTIFF v. WAL-MART STORES, EMPLOYER; AND INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, CARRIER, DEFENDANTS

No. COA02-412

(Filed 18 March 2003)

1. **Workers' Compensation— temporary partial disability— continuing presumption of total disability**

    The Industrial Commission did not err in a workers' compensation case by limiting plaintiff employee's award to temporary partial disability even though plaintiff contends that a continuing presumption of total disability arose based on the fact that she was injured at work and was unable to continue working or find suitable alternative employment at the same wages and for the same number of hours, because neither the Court of Appeals nor our Supreme Court has ever applied a continuing presumption of disability in a context other than an award by the Industrial Commission, a Form 21, or a Form 26 settlement agreement.

2. **Workers' Compensation— findings of fact—symptoms not related to compensable occupational disease**

    The Industrial Commission did not err in a workers' compensation case by finding as facts that plaintiff employee's symptoms after 31 December 1998 were not related to her compensable occupational disease, and that all of her hand, wrist, and arm problems were not related to her employment with defendant employer, because the findings are supported by competent evi-

dence and the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

### 3. Workers' Compensation— attorney fees—failure to address request

The Industrial Commission erred in a workers' compensation case by failing to address plaintiff employee's request for attorney fees under N.C.G.S. § 97-88.1 and the case is remanded to the full Commission to determine whether defendant employer had a reasonable basis to defend the claim.

### 4. Workers' Compensation— occupational disease—competent evidence

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee developed a compensable occupational disease as a result of her employment, because the Commission was presented with competent evidence that: (1) plaintiff was exposed to disease causing job duties while working for defendant employer; (2) plaintiff was not exposed to these duties outside of her employment with defendant; (3) plaintiff's medical history did not reveal any problems with her hands, wrists, or arms; and (4) there was uncontroverted evidence from three medical professionals relating the symptoms and disease afflicting plaintiff to her employment with defendant.

### 5. Workers' Compensation— disability—competent evidence

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff employee was disabled within the meaning of N.C.G.S. § 92-2(9), because there was competent evidence in the record that: (1) plaintiff reported an injury on the night of 23 June 1998 to her assistant manager; (2) plaintiff was taken by a fellow employee to a doctor; (3) plaintiff was advised to cease working based on the disease contracted while working; (4) plaintiff was subsequently terminated based on her injury rendering her unable to perform the requisite job duties; (5) plaintiff was unable to procure alternative employment at the same wages for the same hours despite reasonable efforts; and (6) plaintiff justifiably refused defendant's alternative employment offers.

Appeal by plaintiff and defendants from Opinion and Award of the North Carolina Industrial Commission entered 7 November 2001. Heard in the Court of Appeals 21 January 2003.

[156 N.C. App. 463 (2003)]

*Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff.*

*Young, Moore, and Henderson, P.A., by Joe A. Austin, Jr. and Dawn Dillon Raynor, for defendants.*

WYNN, Judge.

In this workers' compensation appeal, Debra Cialino contends that the full Commission erred in awarding her temporary partial disability because the record reflects her entitlement to a presumption of total disability. On the other hand, her employer, Wal-Mart Stores, Inc. argues the full Commission erred by concluding Ms. Cialino had a compensable occupational disease attributable to her employment with Wal-Mart. After carefully reviewing the record, we hold the Commission's findings of fact are supported by competent evidence. Accordingly, "the [] Commission's findings of fact [are] conclusive on appeal." *Adams v. AVX Corp.*, 349 N.C. 676, 682, 509 S.E.2d 411, 414 (1998). Furthermore, the Commission's findings of fact support its conclusions of law. Therefore, we affirm the Opinion and Award of the Industrial Commission. We remand, however, because the full Commission failed to address Ms. Cialino's request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 (2002).

## I. Facts

The evidence in the record tends to show that Ms. Cialiano began working for Wal-Mart on 3 February 1998. Lacking the financial resources to afford daytime childcare, Ms. Cialino worked Wal-Mart's night shift from 10:00 p.m. to 7:00 a.m. At Wal-Mart, her job duties involved the repetitive use of her hands, wrists, and arms; Ms. Cialino was required to unload boxes from delivery trucks, move the boxes to appropriate locations within the store, stock shelves with the contents of the boxes, and break down the boxes with box cutters. Over the course of her employment with Wal-Mart, Ms. Cialino began to experience pain and numbness in her hands, wrists, and arms. The symptoms were bilateral, but worse on the right side. For a few months, Ms. Cialino treated the pain by placing band-aids around her fingers, wrapping her wrists in bandages, and by applying ointment to inflamed areas.

On 23 June 1998, Ms. Cialino experienced and reported an inflamation of her symptoms to her Wal-Mart assistant manager, Joe McDonald. A fellow employee escorted Ms. Cialino to Wal-Mart's

CIALINO v. WAL-MART STORES

[156 N.C. App. 463 (2003)]

company doctor at Knightdale Primary Care where Rena Hodges, a board certified Physician's Assistant, initially diagnosed Ms. Cialino with a bilateral repetitive motion injury consistent with carpal tunnel syndrome. Ms. Hodges prescribed the following work restrictions: (1) to lift no more than ten pounds, (2) to wear wrist splints, and (3) to limit the use of both hands to no more than forty minutes per hour.

After receiving treatment, Ms. Cialino reported to the store Manager for Wal-Mart, Beatrice Floyd: "The doctor said it looks like carpal tunnel"; Ms. Floyd responded: "Just go home." Ms. Cialino went home; however, later that night, she called Ms. Floyd to inquire about her employment. According to Ms. Cialino, Ms. Floyd stated that Wal-Mart did not have a suitable position on the night shift; accordingly, Ms. Floyd offered her a position during the daytime as a greeter. However, Ms. Cialino refused that offer because of her child-care needs. Moreover, Ms. Floyd purportedly offered Ms. Cialino a temporary position monitoring a fireworks tent during the Fourth of July weekend. Ms. Cialino did not accept this position because of concerns for her safety. When Ms. Cialino did not accept the employment alternatives, Wal-Mart terminated her employment.[1]

On 13 July 1998, Ms. Cialino returned to Knightdale Primary Care for a follow-up visit with Ms. Hodges. Although Ms. Cialino reported that her symptoms had improved, she was still experiencing pain in her hands, wrists, and arms. Based on three visits and a series of medical tests, Ms. Hodges testified on the issue of causation that the repetitive motion Ms. Cialino was exposed to at Wal-Mart was a substantial contributing factor to her symptoms. Unable to provide Ms. Cialino with relief, Ms. Hodges referred her to a board certified orthopedist with an expertise in the field of hand surgery, Dr. James R. Post.

Dr. Post's deposition testimony tends to show that: On 5 November 1998, he first examined Ms. Cialino who complained of

---

1. Although the Commission found that Ms. Cialino used reasonable efforts to procure suitable employment, Ms. Cialino was unable to find employment at the same wage for the same hours. However, Ms. Cialino accepted a part-time job at Gold's Gym in August 1998 doing childcare at a decreased pay rate. At this job, Ms. Cialino earned $6.00 an hour and worked twenty-five hours a week. On 30 December 1998, Ms. Cialino ceased working for Gold's Gym and accepted a child care position at Ladies Fitness and Wellness Center on 20 January 1999. Ms. Cialino earned $6.00 per hour, worked approximately twenty hours a week, and continued working through 1 May 1999. Ms. Cialino gave un-controverted testimony that: (1) the childcare positions did not require the repetitive use of her hands, wrists, or arms; and (2) that she did not lift weights while working at either gym.

bilateral hand pain from working with boxes at Wal-Mart. Dr. Post's initial examination revealed symptoms consistent with bilateral de Quervain's Tenosynovitis and mild bilateral carpal tunnel syndrome. Dr. Post prescribed anti-inflammatory medication, and used a splint to immobilize Ms. Cialino's thumb and wrist. Subsequent medical tests, ruled out the preliminary diagnosis of carpal tunnel syndrome. On 3 December 1998, Dr. Post examined Ms. Cialino for a second time, and noted an improvement in de Quervain's tenosynovitis. However, Ms. Cialino complained of numbness in the dorsum of her right hand and pain in the base of her left thumb. With respect to this pain, Dr. Post made a new diagnosis of "Synovitis of the basial thumb joint." On 31 December 1998, tests performed by Dr. Post revealed that Ms. Cialino's tenosynovitis had completely resolved itself. However, Ms. Cialino still complained of diffuse pain in her hands, wrists, and arms.

In his deposition, Dr. Post expressed the opinion that: (1) the symptoms of de Quervain's tenosynovitis afflicting Ms. Cialino were related to her work at Wal-Mart; (2) Ms. Cialino's work duties at Wal-Mart were a substantial contributing factor in the development of these symptoms; and (3) members of the general public are not equally exposed to the repetitive activities which Ms. Cialino experienced while working at Wal-Mart. However, Dr. Post did express reservations about whether Ms. Cialino's synovitis of the left thumb was caused by her work at Wal-Mart. Dr. Post noted that the synovitis of the left thumb did not appear until 3 December 1998, and that it would not take five months for these symptoms to appear. Furthermore, because tests conducted on 31 December 1998 revealed that Ms. Cialino's tenosynovitis had completely resolved itself, Dr. Post testified that he was "not sure" whether any of Ms. Cialino's symptoms after 31 December 1998 were related to her employment with Wal-Mart.

By the time of their final meeting and appointment on 11 March 1999, Dr. Post testified he had exhausted all non-invasive treatment options and made a diagnosis of bilateral hand pain. According to Dr. Post, Ms. Cialino's symptoms indicated a gradual progression from specific symptoms to a diffuse bilateral pain. Because Dr. Post was uncertain of the cause or diagnosis of these complaints, Dr. Post suggested a referral to the Cedar Neurology Pain Clinic.

Ms. Cialino was subsequently examined by an expert in the field of Neurology, Dr. Gregory M. Bertics. For some reason not explicated in the record, Dr. Bertics was unaware of (1) previous tests per-

formed by Dr. Post and Ms. Hodges, and (2) the fact that many of Ms. Cialino's symptoms arose months after her termination from Wal-Mart. Accordingly, Dr. Bertics duplicated many of the previous diagnoses and tests made by Dr. Post and Ms. Hodges, and based his medical conclusions on the mistaken belief that all of Ms. Cialino's symptoms arose at the same time. Ultimately, Dr. Bertics only contributed one substantial piece of evidence to the record: He testified on the issue of causation that the temporal relationship between Ms. Cialino's duties at Wal-Mart and her symptoms led to a "common sense" conclusion that a "cause and effect relationship" existed between Ms. Cialino's job duties at Wal-Mart and her complaints of diffuse pain. On 17 July 1999, Dr. Bertics released Ms. Cialino from his care.

## II. Procedural History

On 9 September 1998, Ms. Cialino filed a Form 18, notifying Wal-Mart of her injury and workers' compensation claim. On 20 July 1998, Wal-Mart filed a Form 61 denying the claim. On 3 September 1998, Ms. Cialino filed a Form 33, requesting that her claim be set for a hearing before a Deputy Commissioner of the North Carolina Industrial Commission. On 12 November 1998, Wal-Mart filed a Form 33R denying that the injury afflicting Ms. Cialino arose from her course of employment with Wal-Mart. On 20 June 2000, a Deputy Commissioner filed an Opinion and Award concluding that: (1) Ms. Cialino acquired and aggravated her synovitis and tenosynovitis while performing job duties at Wal-Mart; and (2) Ms. Cialino "is entitled to temporary total disability."

On 11 December 2000, Wal-Mart filed a Form 44, a notice of appeal from the Deputy Commissioner's Opinion and Award and an application of review to the full Commission. On 17 January 2001, Ms. Cialino filed a Motion with the Industrial Commission praying for the Commission to refer the matter to the Commissioner of Insurance to investigate Wal-Mart for apparent bad faith practices in violation of N.C. Gen. Stat. § 97-88.1. On 7 November 2001, the full Commission filed an Opinion and Award modifying the Opinion and Award of the Deputy Commissioner. Notably, in Finding of Fact 29 the full Commission found:

Having considered all the evidence, the Commission finds that the opinions of Dr. Post are entitled to greater weight than those of Ms. Hodges or Dr. Bertics. Ms. Hodges is not a physician . . . . Dr. Bertics did not see plaintiff until April

1999 . . . [and] was not aware of the changes in plaintiff's reported symptoms as noted by Dr. Post. Further, Dr. Bertics' opinion concerning causation is based in large part, if not solely, on the temporal relationship between the work activity and the symptoms as related to him by plaintiff. His opinion is thus based on the inaccurate history that all plaintiff's symptoms started soon after she began her work activities with defendant-employer. The more credible evidence shows that the undiagnosed, more diffuse complaints did not arise until December 1998, several months after the initial onset and after plaintiff had ceased her employment with defendant-employer.

Based substantially on this credibility determination, the full Commission determined in Finding of Fact 31 that: "From and after June 24, 1998, until and through December 31, 1998, [Ms. Cialino] was incapable because of her compensable injury to perform her former employment . . . or other suitable employment at the same wages for the same number of hours." However, the full Commission did note, in Finding of Fact 32, that Ms. Cialino was able to procure employment and work between sixteen and twenty-five hours per week during her bout with her compensable injury. Accordingly, the full Commission concluded, as a matter of law, that Ms. Cialino "is entitled to temporary partial disability compensation at the rate of two-thirds of the difference between her pre-injury average of $304.99 and her wages earned at Gold's Gym and Ladies Fitness and Wellness, from June 24, 1998, and continuing through and including December 31, 1998." From this Opinion and Award, Ms. Cialino and Wal-Mart appeal.

### III. Ms. Cialino's Appeal

In her appeal, Ms. Cialino assigns error to the full Commission's findings of fact and conclusions of law. "Under our Workers' Compensation Act, 'the Commission is the fact finding body.' " *Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (quoting *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962)). " 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams*, 349 N.C. at 680, 509 S.E.2d at 413 (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)). The Commission's findings of fact " 'are conclusive on appeal if supported by any competent evidence.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). Thus, this Court is precluded from weighing the evidence on

appeal; rather, we can do no more than " 'determine whether the record contains any evidence tending to support the [challenged] finding.' " *Adams*, 349 N.C. at 681, 509 S.E.2d at 414 (quoting *Anderson*, 265 N.C. at 434, 144 S.E.2d at 274). "However, the Commission's legal conclusions [drawn from competent findings of fact] are [fully] reviewable by" this Court. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982) (citation omitted).

**[1]** By her first argument, Ms. Cialino contends the Industrial Commission erred as a matter of law by limiting her compensation to partial disability benefits. Ms. Cialino argues she was entitled to a legal presumption of continuing total disability until she returned to work at suitable employment. After carefully reviewing the record, we disagree.

It is a well-established legal principle in North Carolina that "once the disability is *proven* [by the employee], 'there is a presumption that [the disability] continues until the employee returns to work at wages equal to those [she] was receiving at the time [her] injury occurred.' " *Brown v. S & N Communs.*, 124 N.C. App. 320, 329, 477 S.E.2d 197, 202 (1996) (quoting *Watson v. Winston-Salem Transit Authority*, 92 N.C. App. 473, 476, 374 S.E.2d 483, 485 (1988) and *Watkins v. Motor Lines*, 279 N.C. 132, 137, 181 S.E.2d 588, 592 (1971)) (emphasis added). In cases involving the *Watkins* presumption, the claimant can meet the initial burden of *proving* a disability in two ways: (1) by a previous Industrial Commission award of continuing disability, or (2) by producing a Form 21 or Form 26 settlement agreement approved by the Industrial Commission. *See e.g.*, *Watkins*, 279 N.C. at 137, 181 S.E.2d at 592 ("If an award is made by the Industrial Commission, payable during disability, there is a presumption that disability lasts until the employee returns to work and likewise a presumption that disability ends when the employee returns to work at wages equal to those he was receiving at the time his injury occurred."); *Radica v. Carolina Mills*, 113 N.C. App. 440, 447, 439 S.E.2d 185, 190 (1994) (presumption arose when "defendant admitted liability . . . through approved settlements (Form 21 and Form 26)"). *See also Saunders v. Edenton Ob/Gyn Ctr.*, 352 N.C. 136, 139, 530 S.E.2d 62, 64 (2000) (Form 21); *In re Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 367 (1997) (Industrial Commission award); *Dancy v. Abbott Labs.*, 139 N.C. App. 553, 557, 534 S.E.2d 601, 604 (2000) (Form 21).

In this case, Ms. Cialino does not claim that she satisfied the initial burden of *proving* her disability, thus spawning a presumption of

continuing total disability, from a prior award of the Industrial Commission or a settlement agreement pursuant to a Form 21 or a Form 26.[2] Instead, Ms. Cialino contends that a continuing presumption of total disability arose because she was injured at work, and, thereafter, she was unable to continue working or find suitable alternative employment at the same wages and for same number of hours. Seemingly, Ms. Cialino argues that there is a third method of establishing a continuing presumption of disability. Neither this Court nor our Supreme Court has ever applied a continuing presumption of disability in a context other than an award by the Industrial Commission, a Form 21, or a Form 26 settlement agreement. We decline to do so in this case. Therefore, the full Commission did not err; consequently, the corresponding assignments of error are overruled.

[2] By her second and third arguments, Ms. Cialino contends the Industrial Commission made erroneous factual findings that: (1) Her symptoms after 31 December 1998 were not related to her compensable occupational disease, and (2) all of her hand, wrist, and arm problems were not related to her employment with Wal-Mart. After carefully reviewing the record we hold the Commission had competent evidence to make the challenged factual determinations, and, therefore, these factual findings are binding on appeal. *See Adams*, 349 N.C. at 682, 509 S.E.2d at 414.

Throughout Findings of Fact 19, 20, 21, 28, and 29 the Commission noted the existence of conflicting evidence in the record regarding pain and symptoms afflicting Ms. Cialino after 31 December 1998. Specifically, where Dr. Bertics and Ms. Hodges testified that the symptoms after 31 December 1998 were caused by her employment with Wal-Mart, Dr. Post was "not sure." The Commission aptly summarized this testimony in Finding of Fact 19, 20, 21, 28, and 29:

19. Dr. Post initially testified that [Ms. Cialino] had de Quervian's tenosynovitis of both hands and synovitis of the left thumb, both of which were caused by her employment with [Wal-Mart]. Dr. Post, however, subsequently testified that the synovitis of the left thumb did not appear until December 3, 1998, and that it would not take five months for these symptoms to appear; he thus concluded that the de Quervian's tenosynovitis is related to [Ms. Cialino's] employment with [Wal-Mart], but he was unable to relate her other symptoms to her employment.

---

2. In fact, Wal-Mart filed a Form 61 denying Ms. Cialino's workers' compensation claim.

20. As found by Dr. Post, [Ms. Cialino's de Quervian's] tenosynovitis had completely resolved and her tests for this condition were negative by December 31, 1998. . . .

21. Although Dr. Post testified that [Ms. Cialino's] bilateral tenosynovitis was caused by [Ms. Cialino's] employment, he was unable to reach a diagnosis concerning [Ms. Cialino's] other, diffuse complaints. Dr. Post explained that these symptoms seemed to change with each visit and that he was unsure that these symptoms were related to her employment. Dr. Post testified that [Ms. Cialino's] current complaints could be psychogenic hand pain, rheumatologic problems, causalgia, or reflex sympathetic dystrophy. As he was uncertain of the diagnosis for these complaints, Dr. Post suggested that referral to a multi-disciplinary pain clinic . . . would be beneficial.

. . . .

28. Dr. Bertics rendered an opinion that [Ms. Cialino's] symptoms were related to her employment and testified that although he had not diagnosed the condition causing [Ms. Cialino's] symptoms, he related the symptoms to employment because of the temporal relationship between the activities and the onset of symptoms. Because Dr. Bertic did not have Dr. Post's records, he was not aware that [Ms. Cialino's] symptoms changed during the course of Dr. Post's treatment.

29. Having considered all the evidence, the Commission finds that the opinions of Dr. Post are entitled to greater weight than those of Ms. Hodges or Dr. Bertics. Ms. Hodges is not a physician . . . . Dr. Bertics did not see plaintiff until April 1999 . . . [and] was not aware of the changes in plaintiff's reported symptoms as noted by Dr. Post. Further, Dr. Bertics' opinion concerning causation is based in large part, if not solely, on the temporal relationship between the work activity and the symptoms as related to him by plaintiff. His opinion is thus based on the inaccurate history that all plaintiff's symptoms started soon after she began her work activities with defendant-employer. The more credible evidence shows that the undiagnosed, more diffuse complaints did not arise until December 1998, several months after the initial onset and after plaintiff had ceased her employment with defendant-employer.

## CIALINO v. WAL-MART STORES

[156 N.C. App. 463 (2003)]

Although the testimony of all three medical professionals was competent evidence, the Commission decided that Dr. Post's opinions were more credible than the opinions of Dr. Bertics or Ms. Hodges. Our Supreme Court has made it eminently clear that: " 'The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " *Adams*, 349 N.C. at 680, 509 S.E.2d at 413. The Commission concluded that: (1) Ms. Cialino contracted de Quervian's tenosynovitis, a compensable occupational disease, through her employment with Wal-Mart; (2) Ms. Cialino's de Quervian's tenosynovitis condition was resolved by 31 December 1998; and (3) Ms. Cialino's diffuse complaints of pain after 31 December 1998, particularly Dr. Post's diagnosis of synovitis of the left thumb, were not related to Ms. Cialino's employment with Wal-Mart.[3] Because the Commission's findings of fact are supported by competent evidence in the record, and because the Commission is the sole judge of the credibility of the witnesses and weight to be given their testimony, this Court may neither revisit these findings nor re-weigh this evidence on appeal. Accordingly, these findings of fact are binding, and, therefore, the corresponding assignments of error are overruled.

---

3 Ms. Cialino challenges this finding and relies on upon the workers' compensation presumption established in *Parsons v. Pantry, Inc.*, 126 N.C. App. 540, 541-42, 485 S.E.2d 867, 869 (1997). The *Parsons* presumption applies to claims for additional medical compensation under N.C. Gen. Stat. § 97-25. Under the *Parsons* analysis:

> In an action for additional compensation for medical treatment, the medical treatment sought must be "directly related to the original compensable injury." . . . If additional medical treatment is required, there arises a rebuttable presumption that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury.

*Reinninger v. Prestige Fabricators, Inc.*, 136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999) (quoting *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 130, 468 S.E.2d 283, 286, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996)).

While, under *Parsons*, there is a presumption that the medical care sought by Ms. Cialino for her hand is related to her workplace injury, this presumption is rebuttable. Pursuant to *Stone v. G & G Builders*, 346 N.C. 154, 157, 484 S.E.2d 365, 368 (1997), defendants can rebut this presumption (1) by producing evidence that Ms. Cialino was capable of returning to work at wages equal to those she was receiving at the time of injury, or (2) by offering medical evidence that she no longer retained any impairment as a result of the workplace injury. *See* also *Harrington v. Adams-Robinson Enters.*, 128 N.C. App. 496, 500-01, 495 S.E.2d 377, 380 (Walker, J., dissenting), *adopted per curiam*, 349 N.C. 218, 504 S.E.2d 786 (1998) (medical evidence that doctor released plaintiff to return to unrestricted work rebutted presumption). Here, the record contains competent medical evidence to support the Commission's findings, establishing that defendants rebutted the presumption, that the work related injuries resolved completely by 31 December 1998.

[3] In her fourth argument, Ms. Cialino contends the Industrial Commission erred by failing to address her request for attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. After carefully reviewing the record, we agree.[4]

"This Court has held that when the matter is 'appealed' to the full Commission. . . , it is the duty and responsibility of the full Commission to decide all of the matters in controversy between the parties." *Vieregge v. N.C. State University*, 105 N.C. App. 633, 638, 414 S.E.2d 771, 774 (1992). Under N.C. Gen. Stat. § 97-88.1, the sanctions and attorney's fees statute:

If the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable attorney's fees . . . .

"The purpose of [this] section is to prevent stubborn, unfounded litigiousness which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990) (citing *Sparks v. Mountain Breeze Restaurant & Fish House, Inc.*, 55 N.C. App. 663, 664, 286 S.E.2d 575, 576 (1982)). In support of her request for costs and attorney's fees, Ms. Cialino argues that Wal-Mart denied her claim without reasonable investigation and failed to accept the claim when liability became reasonably clear. The full Commission's failure to address this issue was error.[5]

Ms. Cialino urges this Court to decide the issue of her entitlement to attorney's fees in this appeal; we decline to do so. *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 50, 464 S.E.2d 481, 484 (1995). Instead, we believe the Commission is better suited, in this particular case, to determine whether Wal-Mart had a "reasonable

4. Furthermore, Ms. Cialino contends the Industrial Commission erred by failing to address her 17 January 2001 motion to have the underlying claim referred to the Department of Insurance for an investigation into Wal-Mart's alleged improper behavior. However, by not referring the matter to the Department of Insurance before hearing the case, the Commission implicitly, and effectively, denied the motion.

5. Although Wal-Mart cites *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 85 S.E.2d 596 (1995), and *Guy v. Burlington Indus.*, 74 N.C. App. 685, 329 S.E.2d 685 (1985), for the proposition that the "Commission is not required to make findings as to facts . . . not material to [Ms. Cialino's] claim," we find this argument unpersuasive. Whether Wal-Mart had a reasonable ground to deny Ms. Cialino's workers' compensation claim is material.

basis" to defend the claim. Accordingly, we remand this issue to the full Commission. We have carefully reviewed Ms. Cialino's remaining assignments of error and find them to be without merit.

### IV. Wal-Mart's Appeal

[4] On appeal, Wal-Mart contends the Industrial Commission erred by concluding that Ms. Cialino developed a compensable occupational disease as a result of her employment. After carefully reviewing the record, we find no error.

Wal-Mart argues the full Commission erred in concluding that Ms. Cialino developed a compensable occupational disease as a result of her employment.[6] Notably, Wal-Mart concedes that Ms. Cialino produced competent evidence that her employment with Wal-Mart aggravated symptoms, but argues that Ms. Cialino failed to present competent evidence that her employment with Wal-Mart caused the underlying occupational disease. This argument is without merit.

Our Supreme Court has recognized that: "In the case of occupational diseases proof of a causal connection between the disease and the employee's occupation must of necessity be based on circumstantial evidence." *Booker v. Duke Medical Center*, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979). The *Booker* Court noted that the Commission should consider the following circumstances when considering whether an occupational disease is caused, "(1) the extent of exposure to the disease or disease-causing agents during employment, (2) the extent of exposure outside employment, and (3) absence of the disease prior to the work-related exposure as shown by the employee's medical history." *Id.*

In the case *sub judice*, the Commission was presented with competent evidence that Ms. Cialino was exposed to disease causing job duties while working for Wal-Mart, that Ms. Cialino was not exposed to these duties outside of her employment with Wal-Mart, and that her medical history did not reveal any problems with her hands, wrists, or arms. Moreover, the uncontroverted evidence from three medical professionals related the symptoms and disease afflicting Ms. Cialino to her employment with Wal-Mart. Thus, the Commission had competent

---

6. As noted, the Commission's findings of fact are binding on appeal if supported by any competent evidence. Moreover, "[t]he evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

evidence from which to find an occupational disease. Accordingly, the Commission's findings of fact are binding on appeal. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414.

**[5]** Furthermore, Wal-Mart contends the Commission erroneously concluded that Ms. Cialino was "disabled" within the meaning of the Workers' Compensation Act. Under the Act, disability is an "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 92-2(9). Our Supreme Court has consistently held that:

> In order to support a conclusion of disability, the Commission must find: (1) [] plaintiff was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in the same employment, (2) [] plaintiff was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in any other employment, and (3) [] plaintiff's incapacity to earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 594, 290 S.E.2d 682, 683 (1982). *See also, Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 345 S.E.2d 374 (1986); N.C. Gen. Stat. § 97-2(9).

In the case *sub judice*, competent evidence in the record reveals that Ms. Cialino reported an injury on the night of 23 June 1998 to her assistant manager; she was taken by a fellow employee to a doctor; she was advised not to continue working because of a disease contracted while working; she was subsequently terminated because her injury rendered her unable to perform the requisite job duties; and she was unable to procure alternative employment at the same wages for the same hours despite reasonable efforts. Although the Commission received evidence that Wal-Mart offered Ms. Cialino alternative employment, the Commission concluded that "the position[s] [were] not suitable," and, in the alternative, that Ms. Cialino "justifiably refused." There is competent evidence in the record to support all of these findings. Accordingly, the Commission satisfied the requirements of *Hilliard*, and Wal-Mart's assignments of error are, consequently, overruled.

We have reviewed Wal-Mart's remaining assignments of error, and find them to be without merit.

**IN RE FORECLOSURE OF BROWN**

[156 N.C. App. 477 (2003)]

Affirmed in part, and remanded.

Judges BRYANT and GEER concur.