FROST v. SALTER PATH FIRE & RESCUE

[176 N.C. App. 482 (2006)]

to be convicted of second degree murder based on a trial judge's instructions rather than on a dictionary definition.

———————

TAMMY P. FROST, EMPLOYEE, PLAINTIFF v. SALTER PATH FIRE & RESCUE, EMPLOYER, AND VOLUNTEER SAFETY WORKERS' COMPENSATION FUND, CARRIER, DEFENDANTS

No. COA05-445

(Filed 7 March 2006)

**1. Workers' Compensation— injury at morale boosting event—compensable**

There was competent evidence to support the conclusion that a morale boosting event was paid for by the Town (although not from its operating budget), and the Industrial Commission did not err by finding that an EMT captain sustained a compensable injury arising from her employment where she was injured at the event.

**2. Workers' Compensation— morale boosting event—benefit to employer—employee urged to attend**

In a workers' compensation case brought by an EMT captain injured at a morale boosting event, there was competent evidence supporting the finding that the Town received a benefit and that EMT volunteers were urged to attend, including plaintiff's undisputed testimony that her Chief wanted her to attend.

**3. Workers' Compensation— morale boosting event—*Chilton* factors**

In a workers' compensation case brought by an EMT captain injured at a morale boosting event, there were findings supporting the presence of at least four, if not all six, of the factors to be considered in awarding workers' compensation from a recreational event. There is no requirement that all six questions be answered affirmatively.

**4. Workers' Compensation— disability—burden of proof—carried**

The Industrial Commission did not err by finding and concluding that an EMT captain injured at a morale building event had met her burden of proving disability. There was testimony to a reasonable degree of medical certainty that plaintiff's pain was

related to her accident and that her inability to work as a waitress (a second job) was related to her accident.

### 5. Workers' Compensation— disability—continuation—insufficient proof

The Industrial Commission did not err by concluding that plaintiff's entitlement to temporary total disability ended on 1 July 2002. The *Watkins* presumption of continuing disability did not apply and plaintiff did not prove the extent to which she was unable to work after she was released by her doctor for restricted sedentary work.

Judge TYSON dissenting.

Appeals by plaintiff and defendants from opinion and award entered 8 February 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 November 2005.

*Ward and Smith, P.A., by S. McKinley Gray, III and William A. Oden, III, for plaintiff.*

*Cranfill, Sumner & Hartzog, L.L.P., by Jonathan C. Anders and Meredith T. Black, for defendants.*

HUDSON, Judge.

Plaintiff Tammy P. Frost, an employee of defendant Salter Path Fire and Rescue ("Salter Path"), claimed an injury as a result of a go-cart accident which occurred during a Fun Day event on 3 October 2001. Following a hearing on 31 March 2003 the deputy commissioner issued an opinion and award on 29 April 2004, denying plaintiff's claim for benefits. Plaintiff appealed, and on 8 February 2005, the Full Commission issued an opinion and award unanimously reversing the Deputy Commissioner's opinion and award, and awarding plaintiff temporary total disability benefits for her compensable injury. Defendants and plaintiff appeal. As discussed below, we affirm.

Plaintiff was employed by Salter Path as a volunteer emergency medical technician ("EMT"), eventually becoming captain of emergency medical services ("EMS"). Plaintiff also worked as a waitress at The Crab Shack in the Town of Salter Path. On 3 October 2001, Salter Path held an annual Fun Day event at Lost Treasures Golf and Raceway. Salter Path sponsored and paid for the event and encouraged volunteers to attend. The Chief of Salter Path EMS encouraged plaintiff to attend in her capacity as captain of EMS. Plaintiff planned

to give a "pep" speech to volunteers during the event, but was injured in a go-cart accident at Lost Treasures. Plaintiff was transported to the hospital and diagnosed with cervical strain and thoracic strain and contusion. Plaintiff and her husband testified, and she presented evidence from three of her treating physicians.

The Full Commission made numerous findings of fact including those challenged by defendants:

2. Plaintiff was injured at the Salter Path Fire and Rescue Fun Day on September 30, 2001. Fun Day was essentially an appreciation day, in which the community thanked volunteer firemen and rescue workers for their contribution and work in the community. The purpose for Fun Day was to boost morale and goodwill for Salter Path volunteers, show appreciation for the unpaid volunteers of Salter Path, and to help develop camaraderie among volunteers. Fun Day was initiated in 2000.

3. The Fun Day event was put on by Salter Path Fire and Rescue Corporation and paid for out of a Special Donations Fund, rather than out of the Department's operating budget. Salter Path Fire and Rescue Corporation paid for the admission of volunteers and their families to Lost treasures Golf and Raceway ("Lost Treasures"), the private amusement park where Fun Day was held, and provided lunch to the participants while at Fun Day.

4. Fun Day was a voluntary event, but Salter Path volunteers and their families were urged to attend if possible. Many volunteers did not attend. Those in attendance signed in at the Treasure Island main window and were given passes for free rides and a free lunch. One purpose of this sign-in sheet was to allow Treasure Island to compute the total cost, according to the discount ticket rates provided. Another possible purpose was to give management of the fire and rescue unit an attendance log. Notwithstanding that attendance was voluntary, Salter Path did keep attendance for the event. The employer received a tangible benefit from this event in that it helped to improve morale of volunteers and it provided an opportunity for leaders of the fire and rescue unit to encourage volunteers to continue their participation as volunteers. The volunteers viewed Fun Day as a benefit of their voluntary employment. The Chief of Salter Path, Ritchie Frost, told plaintiff that he wanted her to attend Fun Day.

5. Plaintiff and her husband then took the Salter Path Fire & Rescue ambulance to Treasure Island and proceeded inside to ride

the go-carts. Plaintiff had signed in as "on duty" prior to her injury and had intended to give a pep speech thanking the EMS volunteers and encouraging their continued participation with Salter Path just as she had done at the previous Fun Day.

We begin by noting the well-established standard of review for worker's compensation cases from the Industrial Commission. We do not assess credibility or re-weigh evidence; we only determine whether the record contains any evidence to support the challenged findings. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *rehearing denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). This Court is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000).

[1] Defendants first argue that the Commission erred in finding and concluding that plaintiff sustained a compensable injury because the injury did not arise out of and in the course of her employment. We do not agree.

Defendants challenge the Commission's findings 2 through 5, and the conclusions that plaintiff's injury arose out of and in the course of her employment. The Workers' Compensation Act provides compensation only for injuries "arising out of and in the course of the employment." N.C. Gen. Stat. 97-2(6) (2003). This Court has identified a list of relevant factors the Commission and Court may consider when determining whether compensation is appropriate for an injury sustained during an employer's recreational event. *Chilton v. Bowman Gray School of Medicine*, 45 N.C. App. 13, 15, 262 S.E.2d 347, 348 (1980). *Chilton* lists several questions to consider in determining whether to award compensation:

(1) Did the employer in fact sponsor the event?

(2) To what extent was attendance really voluntary?

(3) Was there some degree of encouragement to attend evidenced by such factors as:

    a. taking a record of attendance;

    b. paying for the time spent;

    c. requiring the employee to work if he did not attend; or

    d. maintaining a known custom of attending?

(4) Did the employer finance the occasion to a substantial extent?

(5) Did the employees regard it as an employment benefit to which they were entitled as of right?

(6) Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?

*Id.* at 15, 262 S.E.2d at 348 (internal citation omitted). In applying these factors, the Commission here made findings, including those quoted above, and after citing *Chilton*, concluded that the evidence established affirmative answers to at least four of the six *Chilton* factors.

Defendants contend that no competent evidence supported finding 3, that Salter Path put on and paid for the Fun Day, because it was funded by a special contribution fund rather than out of Salter Path's regular operating budget. However, three witnesses testified without objection that Salter Path did sponsor the event and defendants do not dispute that the volunteers' admission to the event was paid for by Salter Path's special contribution fund. Because competent evidence supports this finding, it is conclusive on appeal. This finding in turn supports the portion of conclusion 3 stating that "Salter Path organized and sponsored the Fun Day event."

[2] Defendants also contend that finding 4 is not supported by competent evidence. Specifically, defendants assert that volunteers were encouraged to attend the event, rather than urged to attend. This distinction makes no meaningful difference. In addition, plaintiff's undisputed testimony established that the Chief of Salter Path told plaintiff he wanted her to attend the event. Defendants claim that no evidence supports the finding that defendant received a tangible benefit through morale boosting and increased volunteer retention. Defendants draw our attention to language in *Chilton* stating that

Personal camaraderie and respect between the faculty and students involved in professional education greatly enhance the educational experience. We cannot say that this vague benefit transforms an annual social occasion into a business meeting.

*Id.* at 18, 262 S.E.2d at 350. Here, testimony indicated and the Commission found as fact that the event served the purpose of

encouraging volunteers to continue their participation with defendant, not merely of fostering personal camaraderie. Without the continuing participation of volunteers, defendant here would have no organization. Keeping the fire and rescue organization operational with volunteers is tangible indeed. Thus, the benefits of building morale and camaraderie are more tangible for a volunteer fire and rescue organization like defendant than for the medical school in *Chilton*. This evidence supports finding 4 which in turn supports the portion of conclusion 3 stating that

> Plaintiff justifiably believed that her attendance at Fun Day was mandatory . . . . Fun Day was not really voluntary for Plaintiff due to the extra responsibility she undertook and the request from the Chief that she attend.

The finding also supports the portion of the conclusion stating that Salter Path tangibly benefitted through increased volunteer retention.

[3] Defendants also challenge the statement in finding 5 that plaintiff was "on-duty" at the event, alleging that as a volunteer EMS worker, plaintiff was always "on-duty." Defendants contend that "to the extent [finding 5] insinuates that plaintiff's status as 'on-duty' is relevant to this analysis, it is unsupported." We see no such insinuation in the Commission's opinion and award, nor do we find this relevant to the Commission's conclusion that plaintiff suffered a compensable injury.

The findings discussed above, which are supported by the evidence, in turn support the Commission's conclusion that at least four, if not all six, of the *Chilton* factors are present here. We note that *Chilton* did not establish a requirement that all six questions must be answered affirmatively in order to support an award of compensation. Rather, the Court found that "these questions are helpful in establishing a structural analysis of when to award compensation." *Id.* at 15, 262 S.E.2d at 348. This Court has affirmed that evidence of four of the six *Chilton* factors "established a sufficient nexus between claimant's injury and her employment to permit the award of compensation." *Martin v. Mars Mfg. Co.*, 58 N.C. App. 577, 580, 293 S.E.2d 816, 819, *cert. denied*, 306 N.C. 742, 295 S.E.2d 759 (1982). This assignment of error is overruled.

[4] Defendants next argue that the Commission erred in making findings and conclusions that plaintiff met her burden of proving disability. We disagree.

The Supreme Court has explained what a plaintiff must prove to obtain an award of benefits for disability. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).

> [I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury. In workers' compensation cases, a claimant ordinarily has the burden of proving both the existence of his disability and its degree.

*Id.* (internal citation omitted). The burden is on the employee to show that she is unable to earn the same wages she had earned before the injury, either in the same employment or in other employment. *Id.* at 595, 290 S.E.2d at 684 An employee may meet the *Hilliard* burden in one of the following four ways:

> (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted).

Here, Dr. Tellis gave his opinion, to a reasonable degree of medical certainty, that the pain that plaintiff was complaining of and for which he was treating her was related to her 30 September 2001 accident. He also testified to his unequivocal opinion that plaintiff's inability to perform her waitress position as indicated in the medical notes was related to the 30 September 2001 accident. Dr. Reece testified that he had last seen plaintiff 21 April 2003, and that prior to that visit the accident required that she be out of work, but could return with some restrictions as of that date. This evidence supports the

Commission's findings 27 and 28 that plaintiff symptoms were caused by the injury during Fun Day and that those symptoms prevented her from returning to work as a waitress. These findings in turn support the Commission's conclusion that plaintiff carried her burden of proving her disability, at least up to 1 April 2003.

**[5]** Plaintiff argues that the Commission erred in concluding that her entitlement to temporary total disability benefits ended on 1 July 2002. We disagree.

Plaintiff contends that there was no evidence to support any finding of fact which would support a conclusion that her total temporary disability should be terminated on 21 April 2003. An employee seeking disability compensation bears the burden of establishing the existence and extent of her disability. *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683.

> It is a well-established legal principle in North Carolina that once the disability is *proven* [by the employee], there is a presumption that [the disability] continues until the employee returns to work at wages equal to those [she] was receiving at the time [her] injury occurred. In cases involving the *Watkins* presumption, the claimant can meet the initial burden of *proving* a disability in two ways: (1) by a previous Industrial Commission award of continuing disability, or (2) by producing a Form 21 or Form 26 settlement agreement approved by the Industrial Commission.

*Cialino v. Wal-Mart Stores*, 156 N.C. App. 463, 470, 577 S.E.2d 345, 350 (2003) (internal citations and quotation marks omitted) (emphasis in original). Here, plaintiff does not have a *previous* Industrial Commission award of continuing disability, or a Form 21 or Form 26 settlement agreement approved by the Commission. Instead, she argues that the presumption applies where she has been injured at work and has been unable to continue working or find suitable alternative employment. In *Cialino*, the plaintiff argued that "a continuing presumption of total disability arose because she was injured at work, and, thereafter, she was unable to continue working or find suitable alternative employment at the same wages and for same number of hours." *Id.* at 471, 577 S.E.2d at 351. This Court rejected that argument. *Id.*; *see also Clark v. Wal-Mart*, 360 N.C. 41, 619 S.E.2d 491 (2005).

Because the *Watkins* presumption does not apply here, plaintiff was required to prove the extent and existence of her disability

pursuant to the factors in *Hillard, supra.* The Commission found and concluded

30. Plaintiff has continued to present to Dr. Reese, seeing him on December 5 and 30, 2002, January 30, 2003, February 25, 2003, March 3, 8, and 25, 2003, and April 21, 2003. According to Dr. Reece, plaintiff improved during the December-through-April time period. Dr. Reece indicated in his April 21, 2003, notes that plaintiff could perform sedentary activities at work.

31. The greater weight of the evidence does not support a finding that plaintiff is now unable to work by reason of her compensable injuries.

\*\*\*

4. Plaintiff is entitled to temporary total disability compensation at the rate of $413.33 for those periods of time when she was unable to work for Salter Path by reason of her compensable injuries. She was unable to work by reason of her compensable injuries from September 30, 2001, through April 21, 2003, when Dr. Reece found that she was capable of sedentary work. Defendants are entitled to credits for unemployment benefits in the amount of: $139.00 per week for a period of 17 weeks (December 29, 2001, through May 4, 2002); $300.00 per week from the period of October 1, 2001 through October 28, 2001, in employer-sponsored disability benefits; and $486.26 per week for the period of October 29, 2001, through July 12, 2002, in employer-sponsored disability benefits. These credits are week for week and dollar for dollar. N.C. Gen. Stat. §97-42.

Dr. Reece released plaintiff to sedentary work with some restrictions as of 21 April 2003. Although Dr. Reece stated that plaintiff would not be able to resume her full-time waitress job at that date because of limitations on her activities, the record does not reflect that she proved the extent to which she was unable to work after that time. Given this record, we cannot conclude that the Commission's findings or conclusion were erroneous. We overrule plaintiff's cross-assignment of error.

Affirmed.

Judge LEVINSON concurs.

**FROST v. SALTER PATH FIRE & RESCUE**

[176 N.C. App. 482 (2006)]

Judge TYSON dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion holds, "[g]iven this record, we cannot conclude that the Commission's findings or conclusions were erroneous" and affirms the North Carolina Industrial Commission's ("Commission") award. I respectfully dissent.

## I.  Background

Volunteers of the Salter Path Fire and Rescue ("department") were invited to attend a "fun day" at a local amusement park on 30 September 2001. Six volunteers attended the event. Tammy P. Frost ("plaintiff") attended the event and was injured while riding a go-cart.

Plaintiff filed a worker's compensation claim, and on 29 April 2004, the deputy commissioner concluded "[a]lthough the Plaintiff suffered an injury by accident on September 30, 2001, her injury did not arise out of and in the scope of her employment with the defendant-employer" and denied plaintiff's claim for benefits. Plaintiff appealed. The Full Commission reversed the deputy commissioner's decision and awarded plaintiff temporary total disability benefits for her compensable injury.

Plaintiff testified that her attendance at the event was purely voluntary. Plaintiff admitted it was not "frowned upon" if volunteers did not attend. Plaintiff also testified: (1) while she felt responsible to attend the event as captain of the department, her attendance was not mandatory; and (2) the department did not assign her any responsibilities at the event.

The event was paid for by community donations. When asked how volunteer members of the department would benefit from fun day, plaintiff answered, "[t]he only way I could say they could would be to keep morale up."

## II.  Standard of Review

Our review of a decision of the Commission is limited to two issues: (1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusion of law. The Commission's conclusions of law are reviewable. *Whether an injury arises out of and in the course of a claimant's employment is a mixed question of fact and law, and our review is*

*thus limited to whether the findings and conclusions are supported by the evidence.*

*Hunt v. Tender Loving Care Home Care Agency, Inc.*, 153 N.C. App. 266, 268, 569 S.E.2d 675, 677-78, *disc. rev. denied*, 356 N.C. 436, 572 S.E.2d 784 (2002) (emphasis supplied) (internal quotations and citations omitted).

This Court has also stated,

The Commission is the sole judge of the credibility of witnesses and may accept or reject any of a claimant's evidence. However, *the Commission is required to make specific findings as to the facts upon which a compensation claim is based,* including the extent of a claimant's disability.

*Grant v. Burlington Industries, Inc.*, 77 N.C. App. 241, 247, 335 S.E.2d 327, 332 (1985) (emphasis supplied).

On appeal to this Court, "[t]he Commission's conclusions of law are reviewed *de novo.*" *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

### III. Conclusion of Law

The Workers' Compensation Act provides, " '[i]njury and personal injury' shall mean only injury by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2005).

Our Supreme Court has stated, "the phrase 'out of and in the course of the employment' embraces only those accidents which happen to a servant while he is engaged in the discharge of some function or duty which he is authorized to undertake and which is calculated to further, directly or indirectly, the master's business." *Sandy v. Stackhouse, Inc.*, 258 N.C. 194, 198, 128 S.E.2d 218, 221 (1962) (internal quotations and citation omitted).

In *Chilton v. Bowman Gray School of Medicine,* this Court identified six factors for the Commission and the court to consider when determining whether a plaintiff's injuries arose "out of and in the course of her employment" to be compensable. 45 N.C. App. 13, 15, 262 S.E.2d 347, 348 (1980). The factors include:

(1) Did the employer in fact sponsor the event?

(2) To what extent was attendance really voluntary?

(3) Was there some degree of encouragement to attend evidenced by such factors as:

a. taking a record of attendance;

b. paying for the time spent;

c. requiring the employee to work if he did not attend; or

d. maintaining a known custom of attending?

(4) Did the employer finance the occasion to a substantial extent?

(5) Did the employees regard it as an employment benefit to which they were entitled as of right?

(6) Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?

*Id.* (citation omitted).

In *Chilton*, the plaintiff was injured while playing volleyball at an annual voluntary picnic for medical school faculty. *Id.* at 18, 262 S.E.2d at 350. This Court reversed the Commission's order, which granted plaintiff's claim, and held:

First . . . sponsorship standing by itself would not indicate coverage.

Second, attendance was voluntary. There was testimony from faculty members that they felt they should go, but that they were not compelled to do so. The estimated attendance of around 80% of the department indicates that there was no compulsion.

Third, no record of attendance was taken. The participants were not paid for the time spent, nor was any employee required to work at the medical school if he did not attend.

Fourth, the picnic, while certainly an annual custom, was not an event that employee regarded as being a benefit to which he was entitled as a matter of right.

*Id.* at 17, 262 S.E.2d at 350.

Here, in applying the *Chilton* factors, the Commission concluded, "the evidence in the instant cause establishes affirmative answers to

at least four of the six *Chilton* questions, and arguably, all six." The Commission stated:

(1) *Did the employer in fact sponsor the event?*

Yes. Salter Path organized and sponsored the Fun Day event.

. . . .

(2) *To what extent was attendance really voluntary?*

. . . .

Despite the voluntary nature of Salter Path's operations, Plaintiff justifiably believed that her attendance at Fun Day was mandatory.

. . . .

(3) *Was there some degree of encouragement to attend?*

Even the defendant's own witness, Taffie Baysden, testified that volunteers were encouraged to attend if they could. In addition, Ms. Baysden ultimately testified that there was a record of attendance (which she previously had denied on direct). In fact, she acknowledged that the names of attendees were recorded in Salter Path's login book as well as a separate sign-in sheet at the check-in window at [the park].

(4) *Did the employer finance the occasion to a substantial extent?*

Yes. Salter Path paid for the event.

(5) *Did the employees regard it as an employment benefit to which they were entitled as of right?*

Yes. Fun Day was a benefit for the volunteers and their families. If volunteers did not keep their hours up, they could not attend.

(6) *Did the employer benefit from the event, not merely in a vague way through better morale and good will, but through such tangible advantages as having an opportunity to make speeches and awards?*

Yes . . . Plaintiff was going to make a speech to her EMS workers to thank them for their participation and to encourage continued participation from these volunteers within the department.

The Commission's findings of fact do not support this conclusion of law. *Hunt* at 271, 569 S.E.2d 679 ("The Commission erred in its application of the findings of fact to its conclusions of law.").

The Commission concluded the department "sponsored the Fun Day event." In finding of fact number two, the Commission found that the event was "essentially an appreciation day, in which the community thanked volunteer firemen and rescue workers for their contribution and work in the community." The community, not the department, paid for and sponsored the event.

Under the second *Chilton* factor, the Commission concluded plaintiff's attendance at the event was mandatory. The Commission did not find attendance at the event was mandatory. Plaintiff testified attendance at the event was purely voluntary. Also, in finding of fact number three the Commission found, "Fun Day was a voluntary event."

Regarding the third *Chilton* factor, the Commission concluded that attendance was encouraged, and the department maintained a record of the volunteers who attended. Even if attendance by the volunteers was taken at the event, undisputed evidence reveals names were taken merely to compute costs to pay the amusement park, rather than for any business purpose. The Commission wholly failed to address the remaining factors under this prong. Undisputed evidence shows the volunteers: (1) were not compensated for attending the event; (2) were not required to work if they failed to attend; and (3) there was no longstanding custom of attending the event since this was only the second time the community had sponsored the event.

The Commission's conclusion that the department funded the event is unsupported by the findings of fact. In finding of fact number three, the Commission found the event was "paid for out of a Special Donations Fund, rather than out of the Department's operating budget." The event was paid for with community donations. The community, not the department, funded the event.

In its analysis of the fifth *Chilton* factor, the Commission held the event was a benefit to employees who maintained certain hours. This conclusion was not supported by any findings of fact or any evidence. The Commission failed to find that only "active" volunteers were permitted to take part in the event.

Plaintiff initially testified the active volunteers were entitled as a matter of right to attend the event, but she later recanted her statement and admitted the event was open to every volunteer. *Gutierrez v. GDX Automotive*, 169 N.C. App. 173, 178, 609 S.E.2d 445, 449, *disc. rev. denied*, 359 N.C. 851, 619 S.E.2d 408 (2005). ("Without competent evidence, the Commission's conclusions are likewise unsupported and the opinion and award must be reversed.").

The Commission concluded the department benefitted from the event because plaintiff planned to make a speech. Plaintiff testified her intent was simply to make an impromptu comment regarding her appreciation for the volunteers' work. She testified, "I try to thank my EMTs anytime I can." When asked if she had any role at the event, she testified, "no." Plaintiff admitted the only way the department benefitted from the event was "to keep morale up." In finding of fact number two, the Commission found, "[t]he purpose for Fun Day was to boost the morale and goodwill of Salter Path volunteers." In finding of fact number four, the Commission found, "[t]he employer received a tangible benefit from this event in that it helped to improve morale of volunteers." The Commission's findings of fact do not support the notion that the department benefitted in a tangible way from the event; rather, the department benefitted "merely in a vague way through better morale and good will." *Chilton*, at 18, 262 S.E.2d at 350. Upon *de novo* review of the Commission's conclusion of law, I find error in no competent evidence supports some of the Commission's findings of fact and in some cases undisputed evidence is to the contrary. These unsupported findings do not support the Commission's conclusions of law. *Id.* The Commission's opinion and reward should be reversed.

### IV. Conclusion

Upon *de novo* review of the conclusions of law, the Commission misapplied the *Chilton* factors to this case. The Commission's third conclusion of law was not supported by the findings of fact. Plaintiff's injury, which occurred at a purely voluntary event, did not arise out of her employment as a volunteer for the department. N.C. Gen. Stat. § 97-2(6). I vote to reverse the Commission's order. I respectfully dissent.