***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the deputy commissioner with regard to the holdings on the compensability of plaintiff's headaches and his depression, mental and emotional condition and enters a holding regarding plaintiff's neck injuries.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
 STIPULATIONS
1. The employee is Brian Cloud. The employer is Bobby's Friendly Towing Service. The carrier at risk is The Travelers Insurance Company. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the employer and the employee on or about May 26, 2002, when Brian Cloud suffered a compensable injury, which is reflected on I.C. File 255395.
3. Brian Cloud's average weekly wage at the time of alleged injury was $661.16.
4. All compensation due up to the date of hearing before the deputy commissioner has been paid.
5. The depositions of Dr. Paul, Dr. Bartko, Dr. Wiesler, Noelle Redmon and Dr. Smickley were subsequently submitted and received into evidence.
6. In addition, the parties stipulated into evidence a packet of medical records and reports.
7. The Pre-Trial Agreement dated August 11, 2003, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff was twenty-four years old as of the date of the hearing before the deputy commissioner and has a ninth grade education.
2. Plaintiff's work history has been primarily in manual labor jobs. Plaintiff was employed by defendant-employer as a tow truck driver.
3. On May 26, 2002 plaintiff sustained a compensable injury by accident at work when he was tying a driving shaft on a recreational vehicle (hereinafter R.V.) Plaintiff was under the R.V. attempting to tie the drive shaft when the vehicle began moving. It is unclear exactly how plaintiff injured himself. Plaintiff had no specific recollection of the incident.
4. After the accident, plaintiff was taken to the hospital where the staff obtained a history from an unidentified person that the R.V. had rolled over his right arm and left leg. Plaintiff was noted to have multiple contusions and to be complaining of pain in his right elbow, forearm and wrist, his low back, and his left hip and thigh. Plaintiff made no mention of neck pain while in the emergency room. X-rays revealed that he had sustained a fracture to the ulnar styloid in his right wrist. The emergency room physician splinted his arm and referred him to Dr. Vincent Paul, an orthopedic surgeon.
5. Initially, defendants accepted compensability for right wrist and lower back on a Form 60 filed June 2, 2002.
6. Dr. Paul examined plaintiff on May 31, 2002. The doctor noted abrasions on his right arm, a hematoma to his left thigh and a contusion to his back. Under "past and present medical history", there is a notation of "headaches" without reference of relationship to the accident. There was no reference to "headaches" under "subjective" where complaints resulting from the accident were recorded. Dr. Paul placed his arm in a cast, prescribed medication for him and ordered physical therapy for his back. Plaintiff was treated by Dr. Paul on June 14, June 28, and July 3. As of the June 28, 2002 office visit, plaintiff was having hip pain at the area of the contusion, some low back pain and pain in his wrist. The wrist fracture had not healed. Dr. Paul injected his hip, applied a new cast to his arm and indicated that plaintiff could perform sedentary work.
7. Although plaintiff thought that he returned to work only on July 12, 2002, he must have returned to work before July 3, 2002 when he was not given a sedentary job as recommended by Dr. Paul. Since the work activities caused his back pain to flare up, he returned to Dr. Paul on July 3, 2002 for treatment. Dr. Paul prescribed a muscle relaxant for him on that date and repeated the job restrictions of sedentary work only. Defendant-employer did not have any suitable work available and temporary total disability compensation was continued.
8. As of July 8, 2002 plaintiff complained that Dr. Paul "blew his complaints off" at his last visit. Consequently defendants arranged for Dr. Albert K. Bartko to take over treatment for plaintiff's back and hip complaints and, after he saw Dr. Paul for the last time on August 19, 2002, he was sent for an independent medical evaluation of his hand with Dr. Robert V. Sypher, an orthopaedic and hand specialist at the Hand Center of Greensboro who saw him on September 16, 2002 and October 9, 2002.
9. Dr. Bartko, whose expertise is in physical medicine and rehabilitation, first saw plaintiff on July 24, 2002. Plaintiff was unable to recall the specific details of his injury on May 26, 2002. Plaintiff complained of low back pain. Dr. Bartko's diagnosis was non-specific, non-physiologic hip pain. Dr. Bartko did not believe a cervical MRI was necessary at that time because there was no evidence of a neurological process. Although plaintiff did complain of neck pain, Dr. Bartko did not believe there was a connection between plaintiff's injury and his complaints regarding his neck due to the lack of prior documentation in the medical records.
10. Plaintiff presented to Dr. Paul on July 26, 2002 complaining of headaches and neck pain. Consequently, Dr. Paul performed a cervical epidural injection, which did not prove helpful.
11. After August 19, 2002 Dr. Paul stated he had no further treatment to offer plaintiff. Plaintiff's testimony regarding his need for further treatment by Dr. Paul is not accepted as credible. Plaintiff testified Dr. Paul recommended an MRI of plaintiff's back contrary to Dr. Paul's medical records and testimony. Plaintiff testified he received no benefit from the treatment rendered by Dr. Paul, and earlier he had voiced complaints about Dr. Paul's treatment. Incongruously, plaintiff testified he was satisfied with the treatment and wished to continue treatment with Dr. Paul even though Dr. Paul has no treatment plan for plaintiff.
12. A second Form 60 was filed on August 27, 2002, which accepted liability for right wrist fracture, neck, back and hip pain.
13. After treating plaintiff for several months, Dr. Bartko felt plaintiff had reached maximum medical improvement with respect to his low back complaints. He did not believe plaintiff had a surgical condition of his back and felt plaintiff's subjective complaints were not supported by objective findings.
14. Due to the dissatisfaction which plaintiff and his wife felt toward the Greensboro medical community and the degree of their anger, Dr. Sypher felt a referral to a major medical center to be appropriate. Thus, on December 4, 2002, plaintiff began treatment for his hand with Dr. Ethan Weisler of Wake Forest University Baptist Medical Center, whose expertise is in orthopedic medicine and hand surgery. Plaintiff complained of right wrist pain and Dr. Weisler continued the treatment plan previously prescribed by Dr. Paul and Dr. Sypher.
15. Plaintiff continued to receive treatment from Dr. Weisler for his hand over the course of 2003. Dr. Weisler felt plaintiff had a boney small boney fragment that was still present and referred plaintiff to Gary R. Kuzma, M.D., with The Hand Center of Greensboro for a second opinion regarding surgical intervention. Dr. Kuzma agreed with the recommendation of Dr. Weisler. Thereafter, on September 2, 2003 Dr. Weisler performed the surgery to repair the nonunion of the styloid and removed the fragment at that time. Dr. Weisler indicated that plaintiff would likely be out of work for approximately three to six months following his surgery, but he did anticipate that plaintiff would be able to return to the work force after that time.
16. Dr. Weisler believed plaintiff was depressed but would defer to a licensed psychiatrist or psychologist for this diagnosis.
17. Plaintiff filed a Form 33, Request for Hearing, seeking psychiatric or psychological care. Defendants scheduled an appointment with Dr. Verne Schmickely, a licensed psychologist. Plaintiff refused to attend, insisting he wanted to see a "Dr. Smith." However, plaintiff was unable to provide a first name for "Dr. Smith." Thereafter, plaintiff was ordered by the Executive Secretary to submit to an evaluation by Dr. Schmickely.
18. In the meantime, on March 12, 2003 plaintiff saw Noelle Redmon, a physician's assistant with plaintiff's family doctor. Plaintiff gave Ms. Redmon an inaccurate history. Further, plaintiff told Ms. Redmon that Dr. Weisler had diagnosed depression and post-traumatic stress disorder, which was untrue. Ms. Redmon did not have plaintiff's complete medical records. She prescribed anti-depressants for plaintiff. Ms. Redmon opined that plaintiff's depression was causally related to his injury by accident of May 26, 2002.
19. Dr. Verne Schmickely first saw plaintiff on October 7, 2003. Dr. Schmickely administered a series of psychological tests to plaintiff, took a detailed social history and reviewed plaintiff's medical records. Based upon the results, Dr. Schmickely felt plaintiff exhibited evidence of a somatoform disorder, signs of psychosis and malingering. Dr. Schmickely testified that these problems were pre-existing and not related to plaintiff's compensable injuries. The Full Commission gives greater weight to the opinion of Dr. Schmickely than to that of Noelle Redmon, P.A., as he is a licensed psychologist while she is a physician's assistant.
20. Thus, based upon the greater weight of the evidence, plaintiff's complaints of depression, mental and emotional problems are not related to his compensable injury.
21. In addition to plaintiff's right wrist fracture, plaintiff also sustained an injury to his back as a result of the May 26, 2002 accident. Medical and physical therapy reports documented complaints of mid and low back pain after the injury, however he does not require surgery for his low back. According to Dr. Bartko plaintiff reached maximum medical improvement as of September 23, 2002 with respect to his lower back and the Full Commission so finds.
22. Plaintiff first made mention of headaches on May 31, 2002 when he saw Dr. Paul. However, no reference was made as to the relationship of the headaches to his accident. Dr. Paul later hesitated to relate the headaches to the accident, since it was not brought to his attention that there had been a complaint prior to July 26, 2002. He expressed the opinion that causation between the headaches and the accident would be likely if plaintiff had complained of headaches within two weeks of the injury. Thus, though Dr. Paul causally relates the headaches to the accident, the basis of his opinion is a temporal relationship. Based upon the greater weight of the evidence, plaintiff's complaints regarding headaches are not related to his compensable injuries.
23. Although there is insufficient medical evidence to determine whether plaintiff's cervical complaints are distinct from or related to his headaches or are a direct result of the injury by accident, defendants accepted liability for a neck injury on the second Form 60 dated August 27, 2002.
24. This workers' compensation action involved substantial questions of both fact and law, and the prosecution and defense of the action was not stubborn, unfounded or litigious.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. On May 26, 2002 plaintiff sustained an injury by accident. By Form 60 dated June 2, 2002 defendants admitted liability for the right wrist and lower back complaints. By a subsequent Form 60 dated August 27, 2002 defendants accepted liability for right wrist fracture, neck, back, and hip pain. N.C. Gen. Stat. § 97-2(6).
2. For injuries related to the accident, plaintiff is entitled to medical treatment reasonably required to effect a cure, give relief or lessen the period of disability. Since defendants admitted liability for plaintiff's accident, they are therefore entitled to direct medical treatment. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
3. Plaintiff has failed to prove that his headaches are causally related to his injury by accident as he has not met the causation standards as set forth in Young v. Hickory Business Furniture, 353 N.C. 277, 538 S.E.2d 912
(2000). Only Dr. Paul provides a causal link between plaintiff's headaches and the accident and the basis for this opinion is a temporal relation, which under the law, is not sufficient.
4. Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature of and the cause of the injury. Young v. Hickory BusinessFurniture, supra; Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167,265 S.E.2d 389, 391 (1980). Based on the greater weight of the evidence, plaintiff has failed to prove his depression, mental and emotional problems are causally related to his injury by accident. The testimony of Noelle Redmon, P.A. is insufficient to meet the degree of medical certainty and as well as the competency standard necessary to establish a causal link.Holley v. ACTS INC, 357 N.C. 228, 581 S.E.2d 750 (2003), Cialino v.Wal-Mart Stores, 156 N.C. App. 463, 577 S.E.2d 345 (2003).
5. Even though Dr. Bartko did not causally relate plaintiff's neck complaint to the accident because there was no documentation in the medical records that plaintiff had complained of neck pain following May 26, 2002 until July 24, 2002, nonetheless, defendants admitted liability for a neck injury by the second Form 60 dated August 27, 2002. While the record is unclear with regard to the type of neck injury, if any, he sustained, due to defendant's admission plaintiff is entitled to medical treatment for such injury if a neck injury is hereafter determined to exist medically. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
6. The hearing of this matter was not unreasonably defended or prosecuted, and therefore no attorney's fees should be assessed pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident for his injuries to his right wrist, low back, left hip and neck, if a neck injury is hereafter determined to exist medically.
2. Plaintiff's claim for medical treatment for his headaches and psychological, mental and emotional complaints is DENIED.
3. Defendants shall direct all medical treatment in a timely and effective manner.
4. Plaintiff's motion to change treating physician to Dr. Paul is denied as Dr. Paul testified he has no treatment plan and nothing further to offer plaintiff.
5. Defendants shall pay the costs of this action.
This the 24th day of March 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/llc