* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Industrial Commission has jurisdiction over the parties and subject matter. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the North Carolina Worker's Compensation Act at the time of the alleged injury and/or occupational disease.
4. An employer-employee relationship existed between the parties at all relevant times.
5. The above-designated carrier was on the risk at the time of the injury, alleged or otherwise.
6. Plaintiff contends that she suffers from a compensable injury to her neck, right shoulder, and right arm bearing an injury date of August 9, 2005.
7. Plaintiff's compensation rate is $460.75.
8. The following exhibits were entered into the record at the evidentiary hearing before the Deputy Commissioner:
 a. Stipulated Exhibit #1-Plaintiff's Medical Records
 b. Stipulated Exhibit #2-Industrial Commission Forms
 c. Plaintiff's Exhibit #1 Defendants' Response to Plaintiff's Discovery
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the injury date, August 9, 2005, plaintiff was 34 years old. She was employed as a sales account coordinator by Charles Graham doing business as Companion Home Health/Unimed. While so employed, plaintiff was responsible for conducting in-services with *Page 3 
doctors and their staff, and introducing them to durable medical equipment sold and marketed by defendant-employer. These items included wheelchairs, canes, walkers and other items. Plaintiff's responsibilities also included delivery of the items to the ordering party, including both medical providers and patients receiving such durable medical equipment. Plaintiff had been so employed since approximately November or December 2002. Companion compensated plaintiff with both hourly compensation and commissions.
2. On August 9, 2005, plaintiff and a co-worker, Vanessa Hicks, were lifting a wheelchair while loading it into plaintiff's car at work. Plaintiff and Hicks began loading the wheelchair into the trunk of her car, and about midway through the task, plaintiff felt a sharp pain in her lower back. Initially, plaintiff did not believe that her injury was serious so she finished her tasks associated with loading the wheelchair into her car. By Friday, August 12, 2005, plaintiff experienced pain when arising from bed. Plaintiff went to work that date, and later, sought medical attention.
3. Plaintiff testified at the hearing before the deputy commissioner that on the Monday following her injury, plaintiff informed James Jones, payroll clerk and bookkeeper for defendant-employer, that she hurt her back. Mr. Jones instructed plaintiff to report the injury to Ms. Deborah Hodge the administrator for defendant-employer. Plaintiff spoke to Ms. Hodge the following week. Ms. Hodge instructed plaintiff to let her know if she needed to return to a physician as plaintiff would be required to go to the company physician. Plaintiff testified that Ms. Hodge did not ask plaintiff to fill out any forms at this point.
4. At the hearing before the deputy commissioner, Mr. Jones denied any knowledge that plaintiff's complaints of back pain were due to an incident at work. Ms. Hodge further denied any knowledge of plaintiff's back injury until October 2005. *Page 4 
5. Maxton Medical Center provided the majority of the early examinations and treatment of plaintiff, and did so principally through its physician's assistant, Tina Jacobs, who was under the supervision of Dr. Jennifer Roberson. This provider lost or otherwise misplaced medical records spanning from approximately August through October, 2005. Ms. Jacobs testified at length as to having searched plaintiff's chart for the missing medical records. At the request of plaintiff, Ms. Jacobs wrote a letter dated March 17, 2006 wherein she summarized her treatment of plaintiff during this period.
6. Plaintiff treated with Ms. Jacobs on August 19, 2005 and reported complaints of neck and low back pain. Plaintiff initially complained of problems she was having with taking wheelchairs to patients, and she recalled lifting under a chair, and felt a tug in her back while doing so. Plaintiff reported that the pain occurred in her lower back. Jacobs initially diagnosed plaintiff as suffering from neck and low back pain.
7. Plaintiff continued working until September 29, 2005. On September 29, 2005, defendant-employer scheduled and held a meeting called by Charles Graham, the owner of defendant-employer. As a result of this meeting, defendant-employer essentially demoted plaintiff, making her an assistant to another employee. Mr. Graham told plaintiff that he was not going to fire her but that she could quit if she wanted. As plaintiff's duties had changed, she no longer needed a company vehicle that was recently assigned to her and she went to remove her personal items and a medical goods form the car. Plaintiff felt another pull in her back when she lifted a bag of diabetic shoes out of the car. Plaintiff did not report this incident to defendants.
8. On October 4, 2005, plaintiff presented to the emergency room at Southeastern Regional Medical Center in Lumberton. Following her examination, plaintiff was restricted *Page 5 
from returning to regular duty until October 6, 2005. She was also instructed to return to her family physician.
9. Plaintiff returned to Ms. Jacobs thereafter and at plaintiff's request, on October 31, 2005, Ms. Jacobs wrote a note taking plaintiff out of work beginning October 3, 2005. Ms. Jacobs did not examine plaintiff on October 31, 2005 and based her decision to take plaintiff out of work on plaintiff's statements to Ms. Jacobs that she was unable to work.
10. On November 23, 2005, plaintiff was re-evaluated and, based upon her continuing complaints of neck and low back pain, Ms. Jacobs ordered an MRI of the cervical and lumbar spine. The results of the MRI revealed mild central and right focal disc protrusion at C5-6 and mild left foraminal stenosis at C5-6. The lumbar spine MRI was within normal limits.
11. Plaintiff continued treating at Maxton Medical Center in 2006. On April 18, 2006, Dr. Jennifer Roberson examined plaintiff for continuing back pain. Dr. Roberson referred plaintiff to Scotland Orthopedics.
12. In February 2006, Dr. Roberson completed paperwork for the Robeson County Department of Social Services. Dr. Roberson indicated that plaintiff had no work, driving, or training restrictions but further indicated that plaintiff's condition will limit her ability to work for 90 days. Dr. Roberson further indicated that plaintiff was currently unable to participated in vocational rehabilitation. Dr. Roberson testified that this paperwork and subsequent paperwork for the Robeson County Department of Social Services was completed to assist plaintiff in receiving assistance.
13. Dr. Roberson completed additional paperwork for the Robeson County Department of Social Services on April 19, 2006. She indicated that plaintiff had no work capacity and that plaintiff is restricted from activities requiring standing, sitting, bending, lifting, *Page 6 
carrying, or walking for extended period of time for the next 90 days. Dr. Roberson again indicated plaintiff was not a candidate for vocational rehabilitation. Dr. Roberson repeated these recommendations in paperwork for the Robeson County Department of Social Services on July 19, 2006. Dr. Roberson testified that she did not recommend vocational rehabilitation because she was waiting to see that plan of care the orthopedist would recommend.
14. Plaintiff was evaluated by a physician's assistant at Scotland Orthopedics on May 15, 2006 at which time conservative treatment was recommended. On September 1, 2006, Dr. Rakesh Chokshi at Scotland Orthopedics evaluated plaintiff and determined that surgery was not an option. Dr. Chokshi opined that conservative treatment would best benefit plaintiff and released plaintiff from his care.
14. On November 13, 2006, following an examination of plaintiff and review of the treatment plaintiff received from Scotland Orthopedics, Dr. Roberson opined that plaintiff was a candidate for vocational rehabilitation.
15. Ms. Jacobs offered her opinion that the incident plaintiff described to her could cause a bulging disc. Ms. Jacobs further opined that there was a possibility that plaintiff's symptoms, particularly the cervical disc bulge with left-sided radiculopathy, were related to the events of August 9, 2005. Dr. Roberson could not opine as to whether plaintiff's back condition was a result of something that occurred at work.
16. Plaintiff provided verbal notice to defendants of her accident within 30 days of its occurrence. Specifically, plaintiff informed Mr. Jones and Ms. Hodges, who is responsible for handling workers' compensation claims for defendant-employer, that she believed she had hurt her back while at work.
 * * * * * * * * * * * *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On August 9, 2005, plaintiff sustained a compensable injury as the result of a specific traumatic incident. N.C. Gen. Stat. § 97-2(6).
2. While plaintiff did not provide written notice to defendants within 30 days of the August 9, 2005 injury by accident, plaintiff did provide actual notice to defendants. N.C. Gen. Stat. § 97-22. Furthermore, defendants were not prejudiced in the delay in written notification as they had actual notice within 30 days of the August 9, 2005 injury by accident. Lakey v. U.S. Airways, 155 N.C. App. 169, 573 S.E.2d 703
(2002).
3. Plaintiff must prove that the specific traumatic incident was a causal factor of her injury to her back by a preponderance of the evidence. Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). A physician's assistant's testimony is competent evidence to prove causation. Cialino v. Wal-Mart Stores, 156 N.C.App., 463, 577 S.E.2d 345
(2003). However, plaintiff's treating physician's assistant opined that plaintiff's condition was possibly causally related to the August 9, 2005 injury by accident. Plaintiff's treating physician could not opine with any certainty that plaintiff's back condition was related to the August 9, 2005 injury by accident. Testimony as to the possible cause of a medical condition is insufficient to prove causation. Holley v. ACTS,Inc., supra. Taking into account all the competent, credible evidence of record, plaintiff has failed to prove by a preponderance of the evidence that her current back condition was caused by her injury by accident on August 9, 2005. Id.
 * * * * * * * * * * * *Page 8 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits is hereby DENIED.
2. Defendants shall pay the costs of this proceeding.
This the 13th day of December, 2007.
S/______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________________ DANNY LEE McDONALD COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1